OPINION
{¶ 1} James H. McNichols appeals from a judgment of the Greene County Court of Common Pleas, which found him guilty upon his guilty and no contest pleas of two counts of receiving stolen property. The court sentenced McNichols to two nine-month terms of imprisonment, to be served consecutively. He appeals from his convictions.
 {¶ 2} In July 2000, McNichols was indicted for receiving stolen property, and he was released on bond while awaiting trial (Case No. 2000-CR-405). In October 2000, a capias was issued for McNichols' arrest for violating the terms of his bond. In April 2003, McNichols was arrested and indicted on separate counts of theft and receiving stolen property (Case No. 2003-CR-271).
 {¶ 3} In September 2003, McNichols entered pleas of guilty to receiving stolen property in Case No. 2000-CR-405 and of no contest to receiving stolen property in Case No. 2003-CR-271. In exchange for these pleas, the state did the following: dismissed the count of theft in Case No. 2003-CR-271, recommended community control with an assessment for in-patient drug treatment, and recommended payment of restitution "as appropriate." The court conducted a thorough hearing before accepting the pleas and finding McNichols guilty on each count.
 {¶ 4} At the sentencing hearing, McNichols indicated to the court that he had thought all along that the proposed treatment was out-patient, not in-patient, so that he could be present to see the birth of his child a couple of months later and to take care of his grandmother. He admitted being told that the proposed treatment was in-patient but claimed to have not understood what that meant. Neither McNichols nor his attorney moved to withdraw the plea. He was sentenced to nine months on each count, to be served consecutively.
 {¶ 5} McNichols raises three assignments of error on appeal.
 {¶ 6} "I. The trial court erred in accepting appellant's involuntary plea and finding appellant guilty of the second count of receiving stolen property."
 {¶ 7} McNichols claims that the court should have refused to accept his plea of no contest to the second charge because, in entering that plea, he nonetheless denied any involvement in the crime. He also claims that he was misled by the trial court's incorrect explanation of the effect of a no contest plea. Finally, McNichols claims that a learning disability caused him to misunderstand the word "in-patient" with respect to the type of treatment that the court might order. Based on all of these arguments, McNichols claims that his pleas were involuntary.
 {¶ 8} McNichols claims that the trial court should have refused to accept his plea on the second count of receiving stolen property, because he stated in court that he believed he had been in Columbus on the date of the alleged offense. It was for this reason that he pled no contest, rather than guilty. McNichols clearly indicated his desire to plead no contest to the second count after his counsel explained to the court why the plea to the second count was no contest rather than guilty. Moreover, the nature of the offense of receiving stolen property is such that the date on which the property is discovered in the defendant's possession is not necessarily the date upon which he acquired it. As such, McNichols' claimed absence from the city on the date the stolen property was discovered would not necessarily substantiate his claim that he was uninvolved in the offense. As such, the trial court acted within its discretion in accepting the no contest plea to the second count.
 {¶ 9} McNichols also claims to have been misled by the court's description of the effect of a no contest plea. The court stated:
 {¶ 10} "[A] guilty plea is one in which you make a full admission that you are, in fact, guilty of the crime with which you are charged, where the no contest plea is one in which you are making an admission that you're guilty of the offense, just not contesting the facts, and asking the court to make a decision."
 {¶ 11} This statement at the plea hearing misstated the effect of a no contest plea by indicating that it amounts to an admission of guilt, rather than an admission of the alleged facts. We find this misstatement to be harmless, however. McNichols' counsel had negotiated a favorable plea bargain which clearly appears — as the State argues — to be the motivation for McNichols' no contest plea to the second count. We have no basis to believe that McNichols would not have pleaded no contest had the trial court correctly explained the effect of a no contest plea. As such, McNichols was not prejudiced by the trial court's misstatement.
 {¶ 12} Finally, McNichols claims that his dyslexia caused him to misunderstand the distinction between in-patient and out-patient treatment options. He claims that his plea was induced by his misperception that he would be eligible to receive treatment on an outpatient basis.
 {¶ 13} The trial court told McNichols at the plea hearing that, in return for his pleas, the State, in part, recommended community control with an assessment for inpatient drug treatment, and McNichols agreed that he understood this to be the agreement between him and the State. Furthermore, in-patient treatment is referenced in the written plea agreement. The court conducted a thorough hearing pursuant to Crim.R. 11(C), and the record of the plea hearing simply provides no support for McNichols' claim that he failed to understand the plea. Finally, despite his protestations at the subsequent sentencing hearing that he thought the recommendation was for out-patient treatment, at no time did he say that he would not have entered his pleas had he understood the true nature of the recommended drug treatment or ask to withdraw his pleas. As such, we find no basis to conclude that McNichols' plea was involuntary.
 {¶ 14} The first assignment of error is overruled.
 {¶ 15} "II. Appellant was denied his constitutionally guaranteed right to effective assistance of counsel."
 {¶ 16} McNichols contends that, "[b]ecause of [his] criminal record, his inability to prove his innocence, the impending birth of his child, and his grandmother's reliance on him, it appears that he was motivated significantly by a desire to obtain out-patient treatment." He also claims that he believed he had been promised a particular sentence. He asserts that his attorney was ineffective in failing to make the consequences of his plea clear to him and in failing to attempt to withdraw the plea.
 {¶ 17} A claim of ineffective assistance of trial counsel must be reviewed under the two prong analysis set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Strickland, 466 U.S. at 688. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. State v. Cook (1992),65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 18} We have held that a defendant is denied the effective assistance of counsel based on his attorney's failure to act on his request to withdraw his plea when the possibility that he would have been allowed to withdraw his plea is not insubstantial. State v. Strutton,62 Ohio App.3d 248, 251-252, 575 N.E.2d 466, citing Holtan v.Parratt (C.A.8, 1982), 683 F.2d 1163. See, also, State v. Mooty, Greene App. No. 2000 CA 72, 2001-Ohio-1464. In this case, it is not apparent from the record that McNichols wanted to withdraw his plea. He was making his statement to the court and explaining the result of the treatment assessment when he mentioned the misunderstanding over the type of treatment that was at issue. The prosecutor had agreed to recommend probation conditioned on McNichols' enrollment in an in-patient drug treatment program, as indicated on the written plea agreement which McNichols had signed. However, when McNichols was assessed for in-patient treatment, he indicated an unwillingness to participate. This unwillingness was apparently based on McNichols' misperception that the recommended treatment would be conducted on an out-patient basis. McNichols did not expressly state a desire to withdraw his pleas.
 {¶ 19} Nothing in the record of the plea hearing supports McNichols' claim that he had misunderstood the terms of the plea bargain when he entered his plea, nor does the record support an inference that McNichols' alleged inability to understand the term "in-patient" was or should have been apparent to his attorney. Moreover, the court apparently believed that the attorney had worked "very diligently" on McNichols' behalf and that, in light of McNichols' lengthy criminal record, the attorney had done a "tremendous job" in getting the prosecutor to agree to an inpatient drug treatment assessment. The court expressed frustration that McNichols did not display any sense of responsibility and blamed everything on his numerous "problems." The court also expressed concern about McNichols' "noncooperation with the court" and lengthy criminal record. Based on these comments, it appears unlikely that the court would have granted a motion to withdraw the plea if one had been filed. As such, we cannot conclude that counsel acted ineffectively in failing to file such a motion, as the possibility that he would have been allowed to withdraw his plea was insubstantial.
 {¶ 20} There is no basis for the claims that McNichols thought he was promised a particular sentence or that his counsel fell below an objective standard of reasonableness in explaining to him the terms and consequences of his pleas.
 {¶ 21} The second assignment of error is overruled.
 {¶ 22} "III. The trial court erred in imposing a sentence that was excessive and contrary to law under the circumstances of this case."
 {¶ 23} McNichols claims that the trial court did not have a sufficient basis for imposing consecutive sentences.
 {¶ 24} Statutory law requires certain findings and reasons if consecutive sentences are to be imposed. R.C. 2929.14(E)(4) provides:
 {¶ 25} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 26} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 27} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 28} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 29} The trial court relied on R.C. 2929.14(E)(4)(c), finding that consecutive sentences were necessary to protect the public from future crime, that the sentences were not disproportionate to the seriousness of McNichols' conduct, and that his history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by McNichols. Specifically, the court stated:
 {¶ 30} "* * * [C]onsecutive sentences are necessary to protect the public from future crime and to punish the Defendant. I say this for the reason that the Court has made a finding of your continued criminal involvement at your age and the fact that since this is your first offense as an adult, that you need to be punished for this conduct to prevent the course and direction you've been heading into. The sentence is not disproportionate to the seriousness of your conduct."
 {¶ 31} Although the trial court did not expressly find that consecutive sentences were not disproportionate to the danger McNichols posed to the public, such a finding can be readily inferred from the court's remarks at sentencing, and the failure to make this express finding is not assigned as error.
 {¶ 32} This statutory language clearly permits the trial court to look beyond the criminal conduct to which a defendant has currently pleaded guilty or of which he has been found guilty in determining whether to impose consecutive sentences. Indeed, in considering the risk of recidivism, it is not only appropriate but necessary that the trial court consider the offender's history of criminal conduct. State v. Carpenter,
Greene App. No. 2004 CA 56, 2005-Ohio-805, at ¶ 18. The court noted that McNichols had had multiple opportunities "to respond favorably in the past to probation or parole * * * which [he] failed to do," found that his risk of recidivism was high, and apparently believed that a somewhat lengthy term of imprisonment was necessary to protect the public and to get McNichols on the right track. All of these findings support the court's imposition of consecutive terms of imprisonment. We also note that McNichols was under indictment for the first offense when he committed the second offense, which would justify consecutive sentences pursuant to R.C. 2929.14(E)(4)(a). Finally, we are satisfied that the trial court sufficiently stated its reasons for imposing consecutive sentences. See R.C. 2929.19(B)(2)(c).
 {¶ 33} The third assignment of error is overruled.
 {¶ 34} The judgment of the trial court will be affirmed.
Donovan, J. and Young, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).