[Cite as *State v. Polhamus*, 2014-Ohio-145.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI   COUNTY

STATE OF OHIO                                         :
                                                     :       Appellate Case No. 2013-CA-3
        Plaintiff-Appellee                           :
                                                     :       Trial Court Case No.   12-CR-201
v.                                                   :
                                                     :
CLIFFORD A. POLHAMUS, JR.                            :       (Criminal Appeal from
                                                     :        Common Pleas Court)
        Defendant-Appellant                          :
                                                     :
                              . . . . . . . . . .

                              O P I N I O N

                    Rendered on the 17th day of January, 2014.

                              . . . . . . . . . .

ANTHONY E. KENDELL, Atty. Reg. #0067242, and ROBERT E. LONG, III, Atty. Reg.
#0066796, Miami County Prosecuting Attorney's Office, 201 West Main Street, Safety Building,
Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

CARL BRYAN, Atty. Reg. #0086838, 266 Xenia Avenue, #225, Yellow Springs, Ohio 45387
        Attorney for Defendant-Appellant

                              . . . . . . . . . .

HALL, J.

        {¶ 1}      Clifford A. Polhamus appeals from his January 4, 2013 judgment entry of

conviction on two fourth-degree felony counts of receiving stolen property–a semi truck and a

motorcycle–in violation of R.C. 2913.51(A). After a bench trial, the trial court sentenced Polhamus to a 17-month prison term on each count and ordered that they be served consecutively.[1] We affirm.

## I. The Evidence

{¶ 2}    At trial, Sergeant Lee McCartney of the Miami County Sheriff's Office testified that, on April 18, 2012, he and other officers executed a search warrant at Polhamus' home at 5345 East U.S. 36, in Miami County, looking for a stolen semi truck:

Q. * * * All right. What did you do, what was your part in that?

A. My main responsibility was to help identify the reported stolen truck out of the State of Texas.

Q. Okay and could you see that from the road?

A. I could not positively identify it from the road, but it matched the description. I could not positively i.d. the truck until I was actually in contact with it.

Q. Okay, but the search warrant was issued on that?

A. That's correct.

Q. * * * So you went in; what happened?

A. Once we were on scene, I immediately went up to the truck. The physical identifiers matched which made me proceed on at that point to see if I could find the VIN number from the manufacturer on the truck, which I was able

---

[1]The trial court also found Polhamus not guilty of having a weapon while under disability.

to find on the left frame rail.

Q. * * * And then once you established that, what did you do with that information or what was done with that information?

A. The [VIN] number was called into our dispatch to verify if it was the stolen truck, and we received confirmation back that it was.

{¶ 3} McCartney stated that he searched the truck. There was "a lot of personal property inside the truck, a lot of clothing. But inside the glove box in particular there was two log books that were filled out by the operator which showed signatures by Clifford Polhamus." McCartney said that there also were "several legal documents in there as far as vehicle inspections, vehicle registration, those type of things inside the glove box. Also in there, there was lots of miscellaneous pieces of papers and some like membership type cards and stuff that also had [Polhamus'] information on it." McCartney identified items retrieved from the truck, including the log books. He stated that the last entry in one log book is dated March 31, 2012, and is signed by Polhamus as the driver, and that the last entry in the second log book is dated April 4, 2012, and is also signed by Polhamus as the driver.

{¶ 4} On cross-examination, Sergeant McCartney testified as follows:

Q. And to whom was–you said it was reported stolen * * * to whom was the title issued, do you know?

A. My understanding the–the vehicle was forfeited to the Sheriff's Office in Texas, but as far as who the title was made out to, I'm not sure.

Q. Did you ever see any title, registration to that vehicle?

A. No sir.

{¶ 5}  Detective John Bailey of the Comal County, Texas, Sheriff's Office testified that he became familiar with Polhamus when Polhamus "attended a [forfeiture] hearing that I had in Comal County in reference to a Peter Built [sic] truck/tractor that I had seized." According to Bailey, he "seized the truck/tractor and a Great Dane semi trailer at the same time, because they were attached. I seized both of them because of [sic] the vin numbers had been changed on both of them." Bailey identified a copy of a May 7, 2012 Texas Certificate of Title for a "1998 Peter Built [sic] truck tractor" in the name of the Comal County Sheriff's Office. He identified a court order issued after the forfeiture hearing, and he stated that "it shows that on August 25th of 2011 that Judge rewarded [sic] the Peter Built [sic] truck tractor to the Comal County Sheriff's Office."

{¶ 6}  Bailey stated that the truck was kept in an impound lot after he seized it, and that prior to the forfeiture hearing, on the first weekend in August 2011, the truck was stolen from the lot. He testified that video surveillance of the lot shows that two people approached the gates and opened one of the gates "a little bit." One person then entered the lot, got into the truck, and drove it out, after the other person had "pushed the gates open." Bailey then testified that he learned the truck had been found in Ohio:

Q. * * * At some point in time in April, were you contacted by the Miami

County Sheriff's Office?

A. April of this year, yes, sir.

Q. * * * And did they give you a VIN number on a truck that they noticed

at the defendant's house?

A. No. Initially they–when they contacted me, they asked for some more details, and then I sent them copies of my report with the VIN number on it * * *

* * *

A. –and pictures of the truck.

Q. And it was confirmed that way?

Q. Yes sir.

{¶ 7}    On cross-examination, Detective Bailey stated that the VIN number on the truck came back to  "somewhere up north" and that there was no response to his attempts by regular and certified mail to reach the registered owner. Bailey stated that the events giving rise to the forfeiture of the truck began when he initiated a traffic stop on it at a truck stop in New Braunfels, Texas, in July 2011. According to Bailey, he approached the truck from the rear and ran the license plate on the trailer, which was registered to "a 1985 48 foot Monon semi trailer." "I could tell this was not a Monon trailer," Bailey testified, "and I could tell it wasn't 48 foot long. So I waited till it pulled away from the–the gas pumps, and then I stopped it in a different part of the parking lot, before it got on the highway." During the stop, Bailey also ran the license plate of the truck and "didn't find a stolen report on it." He stated that the driver of the truck was Mr. Ellis, who had a valid Florida driver's license. Bailey stated that he had Ellis "drive the truck and trailer from the truck stop to my impound lot." According to Bailey, Ellis said that he worked for C & P Transportation. Bailey stated that he asked Ellis who owned the truck, and Ellis said "it was–he said his boss' name was–I think he said Dee Polhamus." Bailey stated that he asked Ellis "to try to contact her where I could get copies of the paperwork showing where they had gotten the truck and trailer." Ellis reached Delana Polhamus, Polhamus' wife, and Bailey asked her to

fax him paperwork for the truck and trailer "to show wherever they had gotten [them]." But Bailey "never received anything."

{¶ 8}   Detective Bailey testified that he had no information indicating that Polhamus was involved in the theft of the truck from the impound lot. And Bailey testified that he does not know the identity of the people who took the truck from the lot. He stated that at the time of the forfeiture hearing, he was unaware of the truck's whereabouts.

{¶ 9}   Bailey also testified about the title to the truck:

Q. Now the date the title issued here says May 7th of 2012?

A. Yes sir.

Q. When did that happen?

A. That happened after we were notified of the recovery of the vehicle.

Q. * * * So when does this vehicle become a part of this title? In May of 2012, even though the hearing was in August of 2011?

A. It was awarded to the Sheriff's Office in August of 2011. This is the form that we turn into [sic] the State of Texas to get a title.

A. And there's another form that we turn into [sic] the State * * * to reassign VIN number.

* * *

A. And * * * that whole thing is turned into [sic] the State–

* * *

A. –before the title is issued. Whenever we had it awarded to us, we didn't have possession of the truck, so we didn't transfer the title until it was recovered.

{¶ 10} On re-direct examination, Bailey stated that he impounded the truck pursuant to Texas Transportation Code Section 501.158. He stated that the statute provides that "a peace officer may seize a vehicle or vehicle part, without a warrant, if he has probable cause to believe that the vehicle is stolen or has had a serial number removed, altered or obliterated. And it also says that the vehicle or vehicle part may be treated as stolen property for the purposes of custody and disposition." Bailey stated that VIN numbers on both the truck and trailer had been altered[2] and that the truck and trailer each had more than one VIN number. He stated that he removed the fictitious numbers. At the forfeiture hearing, said Bailey, Polhamus asserted ownership of the truck and stated that "he built the truck." Bailey testified that he did a complete inspection of the vehicle, and that it is a "1998 Peter Built" [sic]. But he stated that the "VIN and the title they were using on it at the time I seized it was for a 1990 Peter Built" [sic].

{¶ 11} Detective Sergeant Jason Moore of the Miami County Sheriff's Office testified that he was involved in the execution of the search warrant on Polhamus' home. He stated that "[i]nitially the search warrant was to examine a truck that was located on the property." According to Moore, "[o]nce that search warrant was done, evidence was recovered. Deputy Waymire developed probable cause to petition the Court for a secondary warrant, which was to include out buildings and the residence." Sergeant McCartney testified that in one of those buildings they found a stolen motorcycle:

> Q. Okay let's talk about the motorcycle for a while. Where * * * did you
>
> find that at?

---

[2] There was questioning at trial suggesting that Texas law and Ohio law differed on the subject. Not so. Ohio law too makes it a felony to "remove, deface, cover, alter, or destroy any vehicle identification number." R.C. 4549.62(A). Likewise, under Ohio law a vehicle whose VIN "has been so removed, defaced, covered, altered, or destroyed shall be seized and forfeited * * *." R.C. 4549.62(D)(2)(a).

A. It was in the small garage closest to the residence.

Q. * * * [A]nd did you check the VIN on that?

A. Yes sir.

Q. All right, and did you run it? Or was it run?

A. I did not personally. Yes but it was run.

Q. Okay and what did it come back?

A. It come back stolen out of the–Troy.

Q. * * * And how long ago?

A. I believe it was in the year 2000.

Q. * * * [A]nd what type of motorcycle is it?

A. It's a 1973 Harley Davidson.

Q. What particular model?

A. I don't recall the model.

Q. * * * I'm going to hand you what's been marked as State's Exhibit 7 as well. See if you recognize that.

A. Yes that's going to be the registration that was attached to the motorcycle.

Q. Okay and it came back stolen?

A. The license plate came back to a–I believe it was 1966 Harley Davidson.

Q. Registered in who's name?

A. Delana Polhamus.

Q. Okay so it was fictitious plates?

A. Yes sir.

McCartney testified on cross examination about when it was stolen:

Q. And you determined that–you or someone determined that this motorcycle was * * * involved in an investigation back in 2000, wasn't it?

A. Yeah, through NICB's records, it showed it was taken in 2000.

{¶ 12} Tony Cotrell testified that he was contacted by the Miami County Sheriff's Office to identify a 1973 Harley Davidson motorcycle. He said that a 1973 Harley had been stolen from him "eleven/twelve years ago." Cotrell identified the motorcycle as his using the VIN number and said that the bike was in the same condition that it was in when it was stolen. Cotrell then testified about the circumstances surrounding the theft and about Polhamus:

Q. * * * Let's go back to the night that it was taken. * * * You were talking to me about that a little bit earlier. What transpired that night before it came up missing?

A. I was on probation and–

Q. What were you on probation for?

A. Alcohol.

* * *

Q. Misdemeanor?

A. Yes sir.

* * *

A. And the next thing I know I was sitting at home and the Troy Police

knocked on my door and asked me if I had been shooting a gun. And I, I told them no I don't even own a gun, and I was drinking then at the time, and they arrested me and–

Q. Violating probation?

A. Yes sir.

Q. * * * Now are you familiar with Clifford Polhamus?

A. No I'm not.   I'm–I've only seen Clifford one time.

Q. And when did you see him?

A. It's–it was probably thirteen years ago or better.

Q. Okay and where was he at at the time?

A. At Stan Scott's garage.

Q. * * * Was there anybody–as you were being arrested, was there anybody in the area that you noticed?

A. Mr. Scott's pickup was sitting in the Ernst's Gravel Pit lot.

* * *

A. And there was several people with him. But when they arrested me, I–I told the city police that when they arrested me that somebody would be breaking in my garage, you know, and it was probably an hour or so after that Sheila, my girlfriend right now, went and checked and my motorcycle and stuff had been stolen out of my garage.

Q. Okay did you recognize anybody else in Scott's truck?

A. It was dark, I really couldn't say, but I just know there was three or four

people with him.

Q. * * * And have you seen that motorcycle since that day before the Sheriff's Office called you?

A. Yes sir I did. I had seen Clifford riding it.

Q. Okay, when?

A. This has been six years ago or better.

Q. Okay and did you report it?

A. Yes sir I did.

Q. Who did you report it to?

A. The Sheriff's Department.

Q. Okay anything come out of that?

A. No sir.

Q. How did you know it was your bike?

A. It just–it just looked like my bike, you know, and–

* * *

A. My dad bought that motorcycle and–

Q. What year and, particular model was it?

A. It was a '73 FLH.

Q. What's FLH?

A. It's the model number of it–it's the full dresser style motorcycle.

{¶ 13}  On cross-examination, Cotrell testified that around the time of the theft the bike did not need repairs:

Q. Did you wreck your vehicle anytime around then?

A. Did I what?

Q. Did you wreck it? This motorcycle?

A. No.

Q. Did you ever have a need to have it repaired?

A. No sir.

## II. Sentencing

{¶ 14} In sentencing Polhamus, the trial court said the following:

In determining the sentence, the Court has considered the Pre-Sentence Investigation Report that was done, the statement of the defendant's counsel and also the statement of the Assistant Prosecuting Attorney. The Court has also considered the purposes and principles of the sentencing statute, which would include the recidivism factors which include the defendant's history of criminal convictions and his failure to respond favorably to sanctions for criminal conduct and the defendant's absence of remorse for his conduct. The Court has also considered the seriousness factors and also the sentencing factors for felonies of the fourth degree, and those would include that the defendant has a prior conviction for causing physical harm to a person and also he has previously served time in prison.

The Court also finds that of note in the defendant's prior conviction was the–I think–let me make sure I get it right–he has a prior conviction in 2004 for Engaging in a Pattern of Corrupt Activity that dealt with the theft of semis from

that time. And that's particularly troublesome to the Court since Mr. Polhamus stole a semi that was under the control of Texas authorities and it had been–and it was stolen from a locked facility.

So it's the judgment of the court, that [sic] and the Court finds that consecutive sentences are necessary to protect the public from future crime, and to punish the defendant, and that a consecutive sentence is not disproportionate to the seriousness of the Defendant's conduct, and the defendant's history of criminal conduct shows that a consecutive sentence is necessary to protect the public from future crime by the defendant. * * *

### III. Analysis

{¶ 15} Polhamus asserts four assignments of error herein.

### A. The First Assignment of Error

APPELLANT'S TWO CONVICTIONS FOR RECEIVING STOLEN PROPERTY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} Concerning review of a manifest-weight challenge, this court has said:

"[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, 2009 WL 282079, ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("manifest weight of the evidence" refers to a greater amount of credible evidence and relates to persuasion"). When

evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id*. The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

*State v. Hudson*, 2d Dist. Clark No. 2011 CA 100, 2013-Ohio-2351, ¶ 40-41.

{¶ 17} Polhamus was found guilty of receiving stolen property–the semi truck and the motorcycle–under R.C. 2913.51(A), which provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property

has been obtained through commission of a theft offense." Regarding the truck, Polhamus makes the following argument:

The evidence pointed to Appellant's wife, Delana Polhamus as the rightful owner of the truck: 1) the registration was in her name; 2) the truck had not been reported stolen; 3) the driver of the truck, Mr. Ellis, was never detained or accused of wrongdoing; 4) Mr. Ellis indicated [Delana Polhamus] was the owner; and 5) Appellant appeared, presumably on his wife's behalf and without being accused of any wrongdoing, in front of the Texas Justice of the Peace in order to claim the vehicle. In short, the Appellant and his wife exhibited several incidents of ownership. Appellant was justified in his belief that he was in lawful possession of the vehicle.

By contrast, when the Miami County Sheriff checked the VIN against his data base that on April 18, 2012 [sic] but at trial *could not recall* to whom it came back. It certainly was not Comal County, because Comal County had to *grant themselves* title some three weeks later, on May 7, 2012. Comal County was not even in possession of the truck at the time it "awarded" itself the property but without receiving title. Appellant believes a detailed exposition of Texas forfeiture law is unnecessary here. Nevertheless, he wishes to point out that no provision of Texas law was ever cited. Even more critically, whatever form or order ostensibly awarding the property to Comal County had no VIN, which is the *sin qua non* of vehicle identification as it relates to ownership. The VIN is coterminous with title; one cannot obtain legal title without a VIN. From Appellant's standpoint, Comal

County is operating on a theory that it can take whatever property it wishes and *make it theirs*, even after the fact.

(Brief of Appellant at 8-9, emphasis sic).

**{¶ 18}**   Detective Bailey testified that he initiated a traffic stop of the truck in July 2011, after discovering that the trailer did not match the trailer to which the license plate was registered. Upon further investigation, Bailey learned that the VIN numbers on both the trailer and truck had been altered. Bailey spoke to Polhamus' wife on the phone, and she failed to produce the documents he requested regarding ownership of the truck. So pursuant to Texas Transportation Code Section 501.158,[3] he seized the truck and trailer. While the truck was in the impound lot awaiting disposition, it was stolen. Contrary to Polhamus' assertion, Comal County did not "*grant themselves* title," but rather a forfeiture hearing was held, *see* Tex.Crim.Proc.Code Ann. 47.01. Although Polhamus attended the hearing and asserted ownership of the truck, on August 25, 2011, the justice of the peace ordered the truck forfeited to the county.[4] Eight months later,

---

[3]This section provides:

(a) A peace officer may seize a vehicle or part of a vehicle without a warrant if the officer has probable cause to believe that the vehicle or part:

   (1) is stolen; or

   (2) has had the serial number removed, altered, or obliterated.

(b) A vehicle or part seized under this section may be treated as stolen property for purposes of custody and disposition of the vehicle or part.

Tex. Transportation Code Ann. 501.158.

[4]   State's exhibit 9, identified as a "certified copy of the Court Order that was issued at the end of the forfeiture hearing" (Trial transcript 21) also indicates that Detective Bailey seized the vehicle on July 5, 2011 because it had a "removed, altered, or obliterated number in violation of Chapter 501 of the Texas Transportation Code." It also contains a Justice of the Peace Order dated "7-15-11" requiring that the

on April 18, 2012, Sergeant McCartney and other officers recovered the truck from Polhamus' property. The log books in the truck indicated that Polhamus had been driving the truck as late as April 4, 2012. Bailey testified that upon recovery of the truck he requested and received a reassigned VIN number as well as a certificate of title for the truck.

{¶ 19} We note that no proof of title to the truck was necessary to find that Polhamus received stolen property. In *State v. Rhodes*, 2 Ohio St.3d 74, 442 N.E.2d 1299 (1982), a theft of a motor vehicle case, the Supreme Court held that "[f]or purposes of determining the commission of a theft offense under R.C. 2913.02, one need not hold a certificate of title to be in lawful possession of a motor vehicle. * * * The important question is not whether the person from whom the property was stolen was the actual owner, but rather whether the defendant had any lawful right to possession." *Rhodes* at 76. Even before *Rhodes*, we had held that the same concept applies to a charge of receiving stolen property. "All that is necessary in a case such as this one [receiving two stolen motorcycles] with respect to the element 'property of another,' which is analogous to a larceny case in this regard, is evidence of a wrongful taking from the Possession of another because the exact state of the title of the stolen property on the date of the crime is of no concern to the thief except that it must have been in someone else. Particular ownership is not vital as to the thief." (Citation omitted.) *State v. Emmons*, 57 Ohio App.2d 173, 177, 386 N.E.2d 838 (2d Dist.1978). Here there is more than ample evidence that the semi truck was in the rightful possession of the Texas authorities when it was stolen from their impound lot.

{¶ 20} Regarding the truck, having thoroughly reviewed the entire record, we conclude that Polhamus' conviction for receiving stolen property is not against the manifest weight of the

property be held by the sheriff's office pending a determination of the rightful owner.

evidence. In other words, since Polhamus retained the truck, knowing or having reasonable cause to believe that it had been obtained through the commission of a theft offense, exceptional circumstances requiring reversal of Polhamus' conviction are not demonstrated.

{¶ 21} As to the motorcycle, Polhamus argues as follows:

The court relied on the testimony of Mr. Cotrell, who says the bike was his "eleven/twelve" years ago. He has a history of drinking and trouble with the law. He said he was not familiar with Appellant, yet claims he saw him riding what "looked" like his bike. Appellant argues these extant uncertainties compound one another, calling into question whether Mr. Cotrell's testimony was probative whatsoever.

Indeed, the bike was found on property owned by Appellant's wife, but there is a simple explanation: Mr. Cotrell wrecked his bike, had Appellant work on the bike, and never paid for the work. Mr. Cotrell testified (at first, anyhow) that he had seen Appellant just once before, at Stan Scott's garage some thirteen years ago. Mr. Scott's garage presumably refers to a place where motorcycle repairs take place. Given the weaknesses in Mr. Cotrell's testimony, and given Appellant's line of questioning as to the historical disposition of the bike, it cannot be said that the offense has been proven beyond a reasonable doubt.

{¶ 22} We initially note that Polhamus ignores Sergeant McCartney's testimony that he ascertained, pursuant to the VIN number on the 1973 Harley Davidson, that it had been reported stolen in Troy, Ohio, in 2000, and that the motorcycle bore fictitious license plates. The motorcycle, like the truck, was found on Polhamus' property. Cotrell testified that when he

identified the bike it was in the same condition as when it was taken from him. He stated that he had observed Polhamus riding the motorcycle six years ago and had reported his observation to authorities. Contrary to Polhamus' assertions, Cotrell testified that he did not wreck the motorcycle or have occasion to have it repaired.

**{¶ 23}** Regarding the motorcycle, again, having thoroughly reviewed the entire record, we cannot conclude that the trier of fact lost its way in finding Polhamus guilty of receiving stolen property. He retained the motorcycle knowing or having reasonable cause to believe that it had been obtained through the commission of a theft offense. Since Polhamus' convictions are not against the manifest weight of the evidence, his first assigned error is overruled.

### B. The Second Assignment of Error

WHEN THE TRIAL COURT OPTED TO MAKE SPECIFIC FACTUAL FINDINGS TO JUSTIFY IMPOSING CONSECUTIVE SENTENCES, AND THOSE FINDINGS WERE ERRONEOUS, THE RESULTING SENTENCE WAS CONTRARY TO LAW AND AN ABUSE OF DISCRETION.

**{¶ 24}** Polhamus asserts that his "sentence was contrary to law because the court failed to make the necessary findings, instead justifying the imposition of consecutive terms on specific findings based on false assumptions and misinformation." Polhamus asserts that the court specifically failed to find that "consecutive sentences are not disproportionate * * * to the danger the offender poses to the public." And he asserts that "more critical were the findings the court *opted to make*, but which it was *not obligated to make*." (Emphasis sic). Polhamus cites the trial court's finding that his 2004 conviction for engaging in a pattern of corrupt activity is "particularly troublesome to the Court since Mr. Polhamus stole a semi that was under the control

of Texas authorities and it had been–and it was stolen from a locked facility." Polhamus asserts that this "finding [that he stole the semi truck] was false; it had no basis in the record. Appellant was never charged with, much less convicted of stealing anything. He was never even suspected of having anything to do with the incident leading to Comal County's loss of possession of the truck." Polhamus asserts that he is "entitled to relief under R.C. 2953.08." Finally, Polhamus asserts that the trial court abused its discretion in imposing consecutive sentences.

{¶ 25} The State responds that "the trial court did not state that the Appellant had stolen the semi from a locked facility in Texas. Rather the trial court indicated that the Appellant stole a semi that was under the control of Texas authorities, and that this semi had been stolen from a locked facility." The State further asserts that receiving stolen property is a theft offense, pursuant to R.C. 2913.01(K)(1), and since "to steal or commit a theft are synonymous terms, then by committing the Theft offense of Receiving Stolen Property, the Appellant stole a semi that was under the control of Texas authorities." Finally, the State asserts that the "record before the trial court supported its findings for consecutive sentences."

{¶ 26} Pursuant to Am.Sub.H.B. No. 86 (H.B. 86), in a sentencing on or after the effective date of September 30, 2011, the revived and recodified version of R.C. 2929.14(C)(4) is in effect. *State v. Nichols*, 2d Dist. Clark No. 2012 CA 38, 2013-Ohio-3285, ¶ 9. R.C. 2929.14(C)(4) requires a trial court to make certain findings before imposing consecutive sentences:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect

the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 27} R.C. 2953.08, which governs the appellate review of felony sentences, provides: The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is

appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2). "When a statute directs a court to make findings before imposing a particular sentence, a failure to make those findings is 'contrary to law.'" *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 12 (8th Dist.), citing *State v. Jones,* 93 Ohio St.3d 391, 399, 754 N.E.2d 1252 (2001). *See also State v. Goodspeed*, 2d Dist. Montgomery No. 19979, 2004-Ohio-1819, ¶ 41 (construing the findings requirement in former R.C. 2929.14(B)(2), and noting that "[u]nlike many other procedural requirements, the findings * * * regimen does not readily lend itself to a substantial compliance alternative"); *State v. Castle*, 2d Dist. Champaign No. 02CA09, 2003-Ohio-45, ¶ 37 (construing the findings requirement in former R.C. 2929.14(E)(4), and saying that the court was not obligated to mimic the exact language of the statute, "although that is probably the better practice," adding that "[n]evertheless, the 'not disproportionate' finding required by R.C. 2929.14(E)(4) * * * must clearly be expressed on the record"). However, despite the Eighth District's strong language in *Venes* that separate and

distinct statutory findings were necessary, the district has continued to interpret statements by the trial court that do not precisely track the statutory language as being sufficient to impose consecutive sentences. *See e.g. State v. Carman*, 8th Dist. Cuyahoga No. 99463, 2013-Ohio-4910 (finding that "consecutive sentences are not disproportionate to the seriousness of your conduct," and that "it is reprehensible conduct, and its not disproportionate to order that you serve these terms consecutively," coupled with an additional finding that "consecutive sentences are necessary to protect the public," was sufficient to satisfy R.C. 2929.14 (C)(4) even though the decision fails to expressly reveal that the trial court said consecutive sentences were not disproportionate to the danger the offender posed to the public). *See also State v. Wright*, 8th Dist. Cuyahoga No. 98901, 2013-Ohio-3132, ¶ 7.

{¶ 28} Here the trial court stated "that consecutive sentences are necessary to protect the public from future crime, and that a consecutive sentence is not disproportionate to the seriousness of the Defendant's conduct * * *." This statement mirrors the language in R.C. 2929.14(C)(4). Admittedly, the court did not recite the next phrase in the statute, "and to the danger the offender poses to the public." But the court did state that "the defendant's history of criminal conduct shows that a consecutive sentence is necessary to protect the public from future crime by the defendant," mirroring the language in R.C. 2929.14(C)(4)(c). Moreover the court recognized that Polhamus had "a prior conviction in 2004 for Engaging in a Pattern of Corrupt activity that dealt with the theft of semis from that time."[5] From the statements made in the context of this record, we conclude that the trial court found that consecutive sentences are not

---

[5] The pre-sentence investigation report that the trial court reviewed is part of our record. It reveals that Miami County deputies were contacted about thefts of semi trucks from Sharonville, Ohio, and Hamilton, Ohio. "Seven different vehicles, semi's, tractors,

disproportionate to the danger Polhamus poses to the public.

and trailers were seized" from Polhamus' property as the result of a search warrant.

{¶ 29} Finding that consecutive sentences are necessary to protect the public when it is apparent that the court has also considered the proportionality of the sentence to the conduct is virtually the same as finding that consecutive sentences are not disproportionate to the danger the offender poses to the public. Prior to the elimination of the former, identical statutory findings requirement for consecutive sentences,[6] we discussed a trial court's omission of the exact statutory phrase in *State v. McNichols*, 2d Dist. Greene No. 2004 CA 62, 2005-Ohio-1933. In *McNichols*, while the omission was not assigned as error, so our discussion of the issue was dicta, we commented that although the trial court "did not expressly find that consecutive sentences were not disproportionate to the danger McNichols posed to the public, such a finding can be readily inferred from the court's remarks at sentencing * * *." *McNichols* at ¶ 31. The trial court's remarks in *McNichols* were no more or less extensive than what the trial court here said about Polhamus.

{¶ 30} If we require the trial court to say more than was said in this case, we are effectively requiring courts to follow precisely the language of the statute or, worse yet, simply to read the statutory language into the record merely to satisfy the statutory consecutive-sentences requirement. The focus should be on whether the trial court performed the required analysis and made appropriate conclusions, not on whether it can read the statute into the record. We believe the trial court made sufficient findings to satisfy the statutory requirements to impose consecutive sentences.

{¶ 31} With regard to the trial court's statement that Polhamus "stole a semi," we disagree with the State's argument that because receiving stolen property comes under the

---

[6] Former R.C. 2929.14(E)(4), which required findings identical to the current R.C. 2929.14(C)(4) for consecutive sentences, was held unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

definition of a theft offense the terms are synonymous, making the trial court's statement accurate. However, we also disagree with Polhamus' argument that the record contains no information "that appellant had any involvement" in the removal of the truck from a locked facility in Texas. (Appellant's brief, 14). There was no objection to the statement, and we conclude, under Crim.R. 52(B), that it does not amount to plain error and that we should not recognize it.

{¶ 32} Plain error is recognized where, but for the error, the result of the trial would clearly have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. An appellate court should exercise the "utmost caution" when taking notice of plain error and should do so only "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 33} At sentencing, the trial court said that Polhamus had "a prior conviction in 2004 for Engaging in a Pattern of Corrupt activity that dealt with the theft of semis from that time." (Sentencing Tr. 6). The court continued, "And that's particularly troublesome to the Court since Mr. Polhamus stole a semi that was under the control of Texas authorities and it had been–and it was stolen from a locked facility." *Id.* Actually, Polhamus was convicted of receiving the semi as stolen property, stolen from the impound lot of the Comal County, Texas, sheriff's office. In our view, the statement that the defendant "stole" the semi was most likely a misspeak or verbal slip by the trial court. But even if it was an intentional statement, it had no bearing on the outcome.

{¶ 34} In our view there was no objection because it was clear that an objection would not make any difference in the outcome. This case was tried to the court, and the trial judge specifically found Polhamus guilty of receiving stolen property, not theft. The same judge

sentenced Polhamus, so the judge must have been fully aware of the specific charge and of his own specific finding that "the defendant is guilty as charged in Count 2 of the Indictment for the offense of Receiving Stolen Property [the semi] * * *." (Decision of the Trial Court, 2).

{¶ 35} Moreover, the evidence presented at trial and in the record established that the truck was stopped in Texas in July 2011, and it was discovered that the VIN "had been changed," making the truck subject to confiscation. Polhamus' wife failed to provide evidence of ownership, so the truck was confiscated. Several weeks later, the truck was stolen from the Texas impound lot. In August 2011, a forfeiture hearing for the truck was held in Texas. Polhamus attended and testified that he built the truck. In April 2012, Polhamus was found in possession of the truck and of log books indicating that he had been driving it. Polhamus did not testify at trial, but he did make a statement for the pre-sentence investigation report (PSI): "The Truck I went & picked it up, no one was doing anything with it, I wasn't going to let it sit at the truck stop. At the time, Texas was not awarded it." (PSI, 4). The PSI also reveals that Polhamus' wife, Delena, when asked by Sergeant McCartney whether one of Polhamus' friends helped him get the truck, said that it was probably one of his friends from Florida, but she did not know who. (*Id*. at 18). The accumulation of these facts, in our view, is adequate to conclude that Polhamus was probably complicit in the removal of the truck, so much so that the theft/receiving misstatement would not make any difference in the result.[7] Had there been an objection, the trial court would

---

[7]"[A] trial court may rely on 'a broad range of information' at sentencing. *State v. Bowser*, 186 Ohio App.3d 162, 926 N.E.2d 714, 2010–Ohio–951, ¶ 13. 'The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense * * *' *Id*. at ¶ 14, 926 N.E.2d 714. * * * '[B]ased on how the court perceives true facts in a case, it may believe that the offender committed a crime other than, or in addition to, the one to which he pleaded.' Id. at ¶ 20, 926 N.E.2d 714. Notably, a court may consider 'allegations of uncharged criminal conduct found in a PSI report[.]' Id. at ¶ 15, 926 N.E.2d 714." *State v. Bodkins*, 2d Dist. Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43. Moreover, the burden of proof at a sentencing hearing is the preponderance of evidence. *State v. Daniel*, 10th Dist.

have corrected the technical misstatement, and the result would undoubtedly have been the same. Because we are unable to conclude that the trial court's misstatement made any difference, the error is not plain and therefore not reversible.

{¶ 36} Finally, appellant argues that the sentence was an abuse of discretion. In *State v. Rodeffer*, 2d Dist. Montgomery Nos. 25574, 25575, 25576, 2013-Ohio-5759, a panel of this court recently held the standard of review for felony sentencing is whether the sentence is clearly and convincingly unsupported by the record or contrary to law. This standard is more deferential to the trial court's determination than an abuse of discretion. Nonetheless, even under an abuse of discretion review, we find no error. "A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion." (Citations omitted.) *State v. Bray*, 2d Dist. Clark No. 2010 CA 14, 2011-Ohio-4660, ¶ 28. Abuse of discretion requires an attitude that is unreasonable, arbitrary or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Given the facts recited by the trial court and its consideration of the PSI and the applicable statutory requirements, we are simply unable to find any abuse of discretion in sentencing, and therefore the sentence is not clearly and convincingly unsupported by the record.

{¶ 37} The Appellant's second assignment of error is overruled.

### C. The Third Assignment of Error

WHEN COUNSEL FAILED TO INFORM THE COURT THAT IT WAS

MISINFORMED AT THE SENTENCING HEARING, APPELLANT WAS

---

Franklin No. 05AP-564 & 683, 2006 -Ohio- 4627, ¶ 29.

DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 38}   The two requirements for a finding of ineffective assistance are that counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. *Id.*; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Further, the threshold inquiry should be whether a defendant was prejudiced, not whether counsel's performance was deficient. *See id.* at 697.

{¶ 39}   Polhamus' argument is that trial counsel was ineffective for failing to object to the trial court's conclusion that he stole the truck. We have already concluded the trial court's verbal slip was likely not objected to because it was apparent that an objection would not make any difference in the outcome. The trial judge had found Polhamus guilty of receiving stolen property and had to be aware of its own findings. The trial court heard the evidence that revealed Polhamus knew the truck had been confiscated by Comal County, Texas, and reviewed the PSI admission that he "picked it up" in Texas before the forfeiture hearing. Polhamus appeared for the forfeiture hearing and claimed he built the truck. The truck, which was still subject to confiscation for having altered VINs, was later found in his possession and contained documents showing that he had been driving it. Assuming that the failure to correct the trial court's misstatement was deficient performance, we fail to see any reasonable probability that the result would have been different. Polhamus removed the truck from Texas knowing the Texas

authorities had a claim to it. If the trial court's conclusion that Polhamus "stole" the truck was only a misstatement, it was harmless. If it was the court's intended conclusion, it was supported by the record. In either event, the result would be no different. Accordingly, Appellant's third assignment of error is overruled.

## D. The Fourth Assignment of Error

APPELLANT WAS DENIED DUE PROCESS AND EQUAL PROTECTION UNDER THE UNITED STATES AND OHIO CONSTITUTIONS BY VIRTUE OF HIS CONVICTION AGAINST THE WEIGHT OF THE MANIFEST EVIDENCE, THE IMPOSITION OF CONSECUTIVE SENTENCES BASED ON FALSE ASSUMPTIONS AND MISINFORMATION, AND HIS BEING DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 40} Polhamus' assertions here simply repeat those in his first three assigned errors. We determined that his convictions are not against the manifest weight of the evidence, that the court did not commit reversible error in sentencing, and that the record does not demonstrate ineffective assistance of counsel. Therefore the fourth assigned error is overruled.

{¶ 41} The judgment of the trial court is affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., concurring in part and dissenting in part:

{¶ 42} I agree with the majority's resolution of the first assignment of error, but disagree with the resolution of the second assignment of error.

{¶ 43} The trial court did not make a mandatory statutory finding that a consecutive sentence is not disproportionate "to the danger the offender poses to the public." R.C. 2929.14(C)(4).

{¶ 44} In my view, a "substantial compliance" test does not meet the statutory mandates, nor does it provide the uniformity and consistency intended by the legislature. The issue before us is not whether the court can justify the sentence it imposed, but rather did the trial court satisfy the express language of R.C. 2929.14(C)(4). In my opinion, it did not and we should not "infer" findings.

{¶ 45} As Judge Richard Rogers aptly stated in his concurring opinion in *State v. Bentley*, 3d Dist. Marion No. 8-12-31, 2013-Ohio-852, "I do not believe that the General Assembly intended that the reviewing court should have to review every comment by the trial court and weigh those comments in order to determine whether it would make the necessary findings when the trial court has not."

{¶ 46} Furthermore, the trial court's conclusion that Polhamus "stole" the semi is not established by the record. The majority suggests that Polhamus was "probably complicit," to the theft. However, this speculation should not enter into a sentencing decision which also minimized the findings required for consecutive terms. In my view, the unfairness of sentencing on the basis of an offense for which Polhamus had not been charged or convicted is self-evident in light of Detective Bailey's testimony that he had no information that Polhamus was involved in the theft of the truck. I would hold this erroneous conclusion is an abuse of discretion,[8] thus

---

[8]The majority cites to *Rodeffer*, suggesting the standard for review of felony sentencing is whether the sentence is clearly and convicingly unsupported by the record or contrary to law. However, the Ohio Supreme Court has not

constituting prejudice.

**{¶ 47}** For these reasons, I would reverse and remand for resentencing.

. . . . . . . . . .

Copies mailed to:

Anthony E. Kendell
Robert E. Long III
Carl Bryan
Hon. Christopher Gee

---

abandoned the two prong analysis set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. As noted in Judge Froelich's separate concurrence in *Rodeffer*, R.C. 2953.08 begins with "in addition to any other right to appeal * * *. "Thus by its language, R.C. 2953.08 does not limit an appellate court's review only to the grounds stated in that statute."