[Cite as *State v. Berry*, 2014-Ohio-132.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

DONTA E. BERRY

      Defendant-Appellant


Appellate Case No.    2013-CA-34

Trial Court Case No.   2012-CR-541


(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 17th day of January, 2014.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Greene County Prosecutor, 55 Greene Street, 1st Floor, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

DAVID M. MORRISON, Atty. Reg. No. 0087487, P.O. Box 750383, Dayton, Ohio 45475
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Donta Berry, appeals from his conviction and sentence on charges of one count of Theft from an Elderly Person and two counts of Theft. After Berry pled guilty to the charges, the trial court indicated that the charges were allied offenses, and the State elected to proceed with the charge of Theft from an Elderly Person. The trial court then sentenced Berry to one year in prison and to restitution.

{¶ 2} Berry contends that the trial court erred in denying his motion to withdraw his plea. Berry also contends that the court erred in disapproving Intensive Prison Programs without providing an adequate factual basis, and in prematurely disapproving of Berry's transfer to transitional control.

{¶ 3} We conclude that the trial court did not abuse its discretion in denying Berry's motion to withdraw his guilty plea. Under standards pertaining to post-sentence motions to withdraw, Berry failed to establish manifest injustice. Even if Berry's motion were considered a pre-sentence motion to withdraw a plea, the trial court did not abuse its discretion in denying the motion.

{¶ 4} We further conclude that the trial court erred in failing to make a finding regarding its disapproval of Berry's placement in Intensive Prison Programs. The trial court also erred in prematurely disapproving Berry's transfer to transitional control. Accordingly, the judgment of the trial court will be affirmed in part and reversed in part, and will be remanded for further proceedings consistent with our opinion.

I. Facts and Course of Proceedings

**{¶ 5}** In November 2012, Berry was indicted on one count of Theft from an Elderly Person, two counts of Theft, and five counts of Receiving Stolen Property. The charges arose from Berry having taken a purse that the owner inadvertently left in a shopping cart in a parking lot.

**{¶ 6}** After initially pleading not guilty, Berry was released on bond. As part of his bond agreement, Berry acknowledged that any re-involvement in criminal activity would violate his bond release.

**{¶ 7}** Berry subsequently entered into a plea agreement with the State in January 2013. In exchange for Berry's guilty plea to Theft from an Elderly Person and two counts of Theft, the State agreed to dismiss the five counts of Receiving Stolen Property. In addition, the State agreed to recommend that Berry receive community control.

**{¶ 8}** At the plea hearing, which occurred on January 24, 2013, the trial court fully discussed all the matters required by Crim.R. 11, and explained Berry's rights. After determining that the Crim.R. 11 plea form was correct, the court discussed the form with Berry. The court ascertained that Berry had gone over the form with his attorney and understood the content of the form. Berry also told the court that there were no other deals, conditions, or promises present between Berry and the State that the court had not discussed.

**{¶ 9}** During the plea hearing, Berry indicated that he was 22 years old, was in his second year of college, and could read, write, and understand the English language. Berry also verified that he was not under the influence of any drugs, alcohol, or medicine, that he understood the proceedings, and that he was satisfied with the legal services he had received.

**{¶ 10}** In particular, the trial court advised Berry that the State and police were bound

by the agreement and recommendation of community control, but that the court, itself, was not bound contractually by the agreement. Specifically, the court stated that it could follow the recommendation or it might choose not to do so. In response, Berry said that he understood. Transcript of January 24, 2013 Proceedings, pp. 12-13.

{¶ 11} The trial court then told Berry that the disposition of the case would be continued, so that the court could become informed about Berry before rendering a decision. In this regard, the court also stated that:

> I want your decision to plead guilty, likewise, to be an informed decision as well. What I mean by that is, I want you to know what you're facing as a result of the decision you're making here today.
>
> Simply put, what you're facing is one of two options, either prison or community control. So, I'm going to discuss both of those in some detail, and the reason why I'm giving both of them to you is they're both on the table. I mean, I can't tell you today which one I'm going to impose. You could both receive community control, you could both receive prison. I don't know. So I'm going to discuss them both and if you have any questions about it, you can let me know.
>
> *Id.* at p. 13.[1]

{¶ 12} The trial court then told Berry that if it decided to impose prison, it could impose a sentence within the range previously discussed (thirty-six months). Berry said he understood that and had no questions about it. *Id.* at p. 15. After explaining both the potential

---

[1] The use of the words "you could both receive prison" is based on the fact that the court was addressing Berry and a defendant in another case at the same time.

prison term and community control, the trial court said, "Now understanding these are the options, appreciating that as of this moment in time, both of them are on the table, is it your desire for me to proceed and accept your guilty plea?" *Id.* at p. 16. Berry responded affirmatively.

{¶ 13} After Berry pled guilty, the trial court found that the wavier and plea were voluntarily, knowingly, and intelligently made, and that the court had complied with Crim.R. 11. The court then found Berry guilty, and asked him to schedule an interview promptly with the probation department, and be "clean, sober, and law-abiding" in the interim. Transcript of January 24, 2013 Proceedings, pp. 17-18. In this regard, the court explained that "[o]ne of the reasons I ask you to do all of this is that part of that PSI is going to be a recommendation to me as to which of these two options I should impose in your case, and your participation in this process could have some bearing on that recommendation." *Id.* at p.18. Berry indicated that he could follow the court's orders. *Id.*

{¶ 14} In February, 2013, the adult probation department filed a motion asking the court to issue a capias for Berry's arrest, and to increase the bond amount to $10,000, based on Berry's failure to appear for an interview. The probation department also noted that it had not been able to contact Berry. The court issued a capias for Berry's arrest and also increased his bond.

{¶ 15} On March 12, 2013, the trial court reassigned the final disposition hearing to April 3, 2013. At the time, Berry was incarcerated, and the court issued an order to the Greene County Sheriff to convey Berry from the Warren County Jail for the hearing.

{¶ 16} At the sentencing hearing, which occurred on April 3, 2013, Berry learned that

the trial court intended to impose a one-year prison sentence, rather than community control. On the same date, Berry filed a pro se motion, seeking to "fire" his public defender, and claiming that his attorney had promised him that he would receive probation if he pled guilty. Berry also filed a motion for a jury trial, based on the fact that he had been misled about his plea.

{¶ 17} On May 23, 2013, the trial court held a hearing on Berry's motion to withdraw his guilty plea. At the time, Berry was represented by a different attorney. Berry testified, and claimed that his former attorney had promised him that if he pled guilty, he would receive community control. Berry stated that his attorney told him that "no matter what," he would not go to jail, and that he should just sign the plea agreement and take the community control. Transcript of May 23, 2013 Proceedings, p. 4.

{¶ 18} Berry also testified that he did not understand when he signed the plea agreement that the trial court might not be bound by the agreement that he had with the prosecutor. Berry stated that once he found out that he would be going to prison, he wanted to change his plea. If the court had imposed probation, he would not have asked to withdraw the guilty plea.

{¶ 19} Berry's former attorney also testified at the hearing. The attorney denied telling Berry that he would not be going to jail, no matter what. Instead, what Berry's attorney told him was that if he did not have any problems, he would more likely than not be getting probation. This was based on what the attorney knew at the time about Berry's record, H.B. 86, and the status of the law in Ohio. Berry's attorney believed that Berry was subject to H.B. 86 at the time he entered his plea and would be sentenced in accordance with H.B. 86. Under that law, courts have discretion not to award community control based on actions that happen between a plea and

the time of sentencing. Thus, if defendants violate the terms of their bonds, courts can impose a prison term.

{¶ 20} Berry's attorney also stated that after the plea hearing, Berry informed him that he had pending felony charges in Hamilton County, Ohio. The attorney told Berry that this could change the situation. The attorney had no further conversations with Berry until sentencing, because Berry was incarcerated. On the date of disposition, which was April 3, 2013, the attorney told Berry that the trial court intended to sentence him to prison. Before that time, Berry had not indicated that he wished to withdraw his plea. That is something that happened during the sentencing hearing.

{¶ 21} After hearing the evidence, the trial court noted that community control would have been required at the time of the plea hearing, based on H.B. 86. However, after the plea, Berry committed a violation of his bond, which would remove him from the requirements of H.B. 86, and allowed the court to impose a prison term.

{¶ 22} The trial court chose to believe Berry's former attorney regarding what had happened, and concluded that the attorney had given Berry correct advice. After applying various factors, the trial court concluded that Berry failed to demonstrate manifest injustice, and denied the motion to withdraw the guilty plea. The court then merged the charges and sentenced Berry to one year in prison and $647.31 in restitution. Berry appeals from his conviction and sentence.

## II. Did the Trial Court Err
## in Overruling the Motion to Withdraw the Plea?

**{¶ 23}** Berry's First Assignment of Error is as follows:

The Trial Court Abused Its Discretion in Overruling Appellant's Motion to Withdraw His Guilty Plea as Such Plea Was Not Made Knowingly, Voluntarily, and Intelligently.

**{¶ 24}** Under this assignment of error, Berry contends that his guilty plea was not made knowingly, voluntarily, and intelligently because he was following the advice of his first trial counsel, who promised him that he would receive community control in exchange for his plea. Berry also relies on his former counsel's mistake at the plea hearing regarding whether the offenses to which he intended to plead guilty would merge.

**{¶ 25}** The record indicates that both the defense and the State believed at the plea hearing that Berry's offenses were not subject to merger. By the time of the actual disposition in May 2013, both the defense and State agreed that the offenses would merge.

**{¶ 26}** Although "a presentence motion to withdraw a guilty plea should be freely and liberally granted[,] * * * a defendant does not have an absolute right to withdraw a plea prior to sentencing." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). In such situations, "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id*. Furthermore, "[a]bsent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed." *Id.*

**{¶ 27}** In contrast, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. The Supreme Court of Ohio has defined "manifest injustice" as " 'a clear or openly unjust act.' "

*State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), quoting *Webster's Third New International Dictionary* 1164, 1375 (1986).

**{¶ 28}** The Supreme Court of Ohio has also stressed that post-sentence withdrawal "is allowable only in extraordinary cases." (Citation omitted.) *Smith* at 264. Furthermore, "[a] motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Id.* at paragraph two of the syllabus.

**{¶ 29}** In the case before us, the trial court analyzed the withdrawal issue under both pre-sentence and post-sentence standards. However, we conclude that post-sentence standards apply. Berry moved to withdraw his plea during the sentencing hearing, after finding out that the court intended to send him to prison. In such circumstances, we have considered motions to withdraw as having been made post-sentencing, because " 'it was only after counsel learned of the court's sentence that he sought to vacate his client's guilty plea.' " *State v. Sylvester*, 2d Dist. Montgomery No. 22289, 2008-Ohio-2901, ¶ 9, quoting *State v. Long*, 2d Dist. Montgomery No. 13285, 1993 WL 155662, *6 (May 13, 1993). In this regard, we have reasoned that "a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise." *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio- 6181, ¶ 8, citing *State v. Wallen*, 2d Dist. Montgomery No. 21688, 2007-Ohio-2129, ¶ 22.

**{¶ 30}** Based on the facts in the record, we conclude that Berry failed to meet his burden of establishing manifest injustice. The evidence indicates that Berry suffered a change of heart after learning of his sentence, and this does not arise to the level of manifest injustice.

*Long* at *7.   *See, also*, *Sylvester* at ¶ 18.

{¶ 31}   At the plea hearing, the trial court clearly explained the following facts: (1) Berry was subject to a potential prison sentence; (2) the court had not yet made up its mind whether to impose a prison sentence or community control; and (3) Berry's conduct would assist the court in deciding what it would do.   Berry offered nothing in the way of evidence at the motion hearing, other than his own statements, which were contradicted by the attorney who had assisted him at the plea hearing.   The trial court found Berry's attorney credible, and we must defer to the trial court's determination of credibility.   *See, e.g.*, *Xie,* 62 Ohio St.3d at 525, 584 N.E.2d 715, citing *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324.   *Accord State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 22.   (Citations omitted.)

{¶ 32}   Based on the preceding discussion, we conclude that the trial court did not abuse its discretion in refusing to let Berry withdraw his plea.   Furthermore, even if we considered the motion under pre-sentence standards, our opinion would remain the same.

{¶ 33}   As was noted, trial courts have discretion in deciding whether to grant pre-sentence motions to withdraw.   *Xie* at 527.   In denying pre-sentence motions to withdraw, trial courts do not abuse their discretion when:

> (1) the accused is represented by competent counsel; (2) the accused was afforded a full Crim.R. 11 hearing before he entered his plea; (3) the accused is given a complete, impartial hearing on the motion to withdraw; and (4) the court gave full and fair consideration to the request to withdraw.   *Hess* at ¶ 18, citing *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus.

**{¶ 34}** Our review of the record indicates that all these factors have been met. Although Berry relies on his former counsel's error in concluding that the offenses were not allied, the State was also under a similar impression at the time of the plea hearing. By the final disposition, both sides agreed that the offenses should be merged. Furthermore, the issue of whether the offenses were allied is irrelevant to the matter upon which counsel's plea advice was based – the application of H.B. 86. As the trial court noted, counsel's advice on that point was "right on the money." Transcript of May 23, 2013 Proceedings, p. 38. The trial court also noted that Berry's former counsel had been practicing in its court for a significant amount of time and had handled many motion hearings, sentences, and trials. There is nothing in the record to indicate otherwise about counsel's experience.

**{¶ 35}** The record also demonstrates that Berry was given a full Crim.R. 11 hearing before entering his plea, and a complete, fair, and impartial hearing on the motion to withdraw. The trial court allowed Berry to present testimony and documents, and to fully cross-examine the State's witness. And finally, the trial court's decision immediately after the hearing is very thorough, and reveals that the court gave serious consideration to the motion to withdraw.

**{¶ 36}** In *State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995), the First District Court of Appeals added several factors to the *Peterseim* analysis, including: "(5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, and (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges." (Citations omitted.) *Id.* at 240. The First District Court of Appeals stressed that this list is not exhaustive. *Id.*

**{¶ 37}** The trial court specifically discussed these factors in its decision. In particular, the court noted that while Berry's motion was made within the time frame contemplated by the rule, the court was required, by our authority, to apply a manifest injustice standard. We agree with this statement. The trial court also observed that Berry's understanding of the nature of the charges and potential sentences was not an issue, because these matters were addressed at the time of the plea. Again, we agree.

**{¶ 38}** Concerning the eighth factor, Berry never indicated that he was not guilty or that he had a complete defense to the charges; in fact, this item was not mentioned at all during the plea hearing. Finally, regarding the sixth factor, the trial court discussed Berry's specific reasons for bringing the motion, which included Berry's assertion that he was told he would receive community control. The trial court indicated that it believed the testimony of Berry's former counsel, who told Berry that he would probably receive community control as long as he was compliant. Again, the record supports this finding, and we defer to the trial court's credibility determinations. *Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, at ¶ 22.

**{¶ 39}** Accordingly, the trial court did not abuse its discretion when it denied Berry's motion to withdraw his plea. Berry's First Assignment of Error is overruled.

III. Did the Trial Court Err in Disapproving of Intensive Prison Programs?

**{¶ 40}** Berry's Second Assignment of Error states that:

The Trial Court Erred When It Disapproved of Intensive Prison Programs

Without Providing An Adequate Factual Basis for the Denial.

**{¶ 41}** Under this assignment of error, Berry contends that he was statutorily eligible

for Intensive Prison Programs (IPP) under R.C. 5120.032(B)(2), and that the trial court erred by failing to make specific findings giving its reasons for disapproving IPP.

{¶ 42}    The trial court did not discuss IPP at the sentencing hearing.  The sentencing entry contains the following statement: "IPP is approved/not approved, sentence given is appropriate."   On the entry, the trial court crossed off "is approved" and circled "not approved." May 23, 2013 Judgment Entry, Doc. # 56, p. 5.

{¶ 43}    The State does not challenge Berry's eligibility for IPP under R.C. 5120.032. Instead, the State contends that the trial court provided a sufficient factual basis for its decision. In this regard, the State relies on *State v. Jackson*, 5th Dist. Knox Nos. 05 CA 46, 05 CA 47, 2006-Ohio-3994.

{¶ 44}    In *Jackson*, the trial court did not make any findings to support denial of IPP. However, the Fifth District Court of Appeals concluded that "the record, viewed in its entirety, provides sufficient reasons to support the court's denial of an intensive prison program, even if such reasons were also applicable to other sentencing requirements under R.C. Chapter 2929." *Id.* at ¶ 15.

{¶ 45}    We have previously distinguished the Fifth District's opinion in *Jackson. See State v. Allender*, 2d Dist. Montgomery No. 24864, 2012-Ohio-2963, ¶ 25.   In *Allender,* the trial court disapproved of IPP at the sentencing hearing, stating that "You are eligible for shock incarceration or intensive program prison; however, based on the purposes and principles of sentencing, and the seriousness and recidivism factors in the Revised Code, the Court will disapprove of your placement in such programs."   *Id*. at ¶ 13, The trial court also made the following statement in its sentencing entry:

"After reviewing the criminal history of the defendant, the pre-sentence investigation, the facts and circumstances of the offense, and any victim impact statement [there was one], the Court disapproves of the defendant's placement in a program of shock incarceration under Section 5120.031 of the Revised Code, or in the intensive program prison under Section 5120.032 of the Revised Code." *Id.* at ¶ 14.

{¶ 46}   We concluded that this was insufficient, and reversed the trial court's judgment on this basis.   In doing so, we rejected the theory of "implied findings," stating that:

In the case before us, the State argues that "[t]his record provides sufficient reasons to support shock incarceration and IPP disapproval."   That may well be, but R.C. 2929.19(D) requires more than that reasons can be found in the record to support the trial court's disapproval of the programs; the statute requires that the trial court, if it shall make a recommendation, must "make a finding that gives its reasons for its recommendation or disapproval."   This statutory requirement, imposed on the trial court, is not satisfied by an appellate court finding in the record reasons that the trial court could have given, or might have given, for disapproval.   *Id.* at ¶ 22.

{¶ 47}   We also distinguished other cases, like the decision of the Twelfth District Court of Appeals in *State v. Tucker*, 12th Dist. Butler No. CA2011-04-067, 2012-Ohio-50, ¶ 24, because the trial court in *Allender* had "referred to various general principles that it considered, and to various sources of information that it reviewed, [but] * * * did not refer to any specific facts in deciding to disapprove Allender for shock incarceration or the intensive program prison."

*Allender* at ¶ 23.

**{¶ 48}**　In the case before us, the trial court stated, when disapproving IPP, that "the sentence is appropriate."　May 23, 2013 Judgment Entry, Doc. # 56, p. 5.　This is similar to what occurred in *Allender*, and is not a factual finding.　We also see little difference between this comment and the trial court's observation in *State v. Blessing*, 2d Dist. Clark No. 2011 CA 56, 2013-Ohio-392, that " 'In the interest of justice and truth in sentencing, it is hereby Ordered that the defendant serve her entire stated prison term in the Ohio State Penitentiary.' "　*Id.* at ¶ 45. We concluded that this was insufficient and remanded for resentencing.　*Id.* at ¶ 48.

**{¶ 49}**　There may be facts in the record justifying disapproval of IPP, but the trial court did not refer to them when deciding to disapprove Berry for placement in IPP.　Accordingly, the judgment of the trial court will be reversed, insofar as the designation of IPP status is concerned, and will be remanded to the trial court for further proceedings on this issue.

**{¶ 50}**　Berry's Second Assignment of Error is sustained.

### IV.　Did the Trial Court Err in Prematurely Disapproving

### of Transfer to Transitional Control?

**{¶ 51}**　Berry's Third Assignment of Error is as follows:

> The Trial Court Erred When It Prematurely Disapproved of Appellant's Transfer to Transitional Control in the Sentencing Judgment Entry.

**{¶ 52}**　Under this assignment of error, Berry contends that the trial court erred by disapproving, at the time of sentencing, of Berry's transfer to a transitional control program under R.C. 2967.26.　According to Berry, the court's action was premature, because a furlough

recommendation does not occur until after a prisoner has been confined.

{¶ 53}    R.C. 2967.26 allows for transfer of prisoners to transitional control during the final one-hundred eighty days of their confinement.   In this regard, R.C. 2967.26(A)(2) states that:

> At least sixty days prior to transferring to transitional control under this section a prisoner who is serving a term of imprisonment or prison term for an offense committed on or after July 1, 1996, the division of parole and community services of the department of rehabilitation and correction shall give notice of the pendency of the transfer to transitional control to the court of common pleas of the county in which the indictment against the prisoner was found and of the fact that the court may disapprove the transfer of the prisoner to transitional control and shall include the institutional summary report prepared by the head of the state correctional institution in which the prisoner is confined.   The head of the state correctional institution in which the prisoner is confined, upon the request of the division of parole and community services, shall provide to the division for inclusion in the notice sent to the court under this division an institutional summary report on the prisoner's conduct in the institution and in any institution from which the prisoner may have been transferred.   The institutional summary report shall cover the prisoner's participation in school, vocational training, work, treatment, and other rehabilitative activities and any disciplinary action taken against the prisoner.   If the court disapproves of the transfer of the prisoner to transitional control, the court shall notify the division of the disapproval within

thirty days after receipt of the notice. If the court timely disapproves the transfer of the prisoner to transitional control, the division shall not proceed with the transfer. If the court does not timely disapprove the transfer of the prisoner to transitional control, the division may transfer the prisoner to transitional control.

**{¶ 54}** We have routinely held that a trial court errs when it prematurely disapproves of transitional control in its judgment entry. *See, e.g., State v. Bates*, 2d Dist. Montgomery No. 23707, 2012-Ohio-6039, ¶ 47, and *State v. Howard*, 190 Ohio App.3d 734, 2010–Ohio–5283, 944 N.E.2d 258, ¶ 44 (2d Dist.). We have also concluded that this error "can be cured by remanding this cause to the trial court for the limited purpose of amending the judgment entry to delete the disapproval of [the defendant] for transitional control." (Citations omitted.) *Bates* at ¶ 47.

**{¶ 55}** In the case before us, the State argues that the trial court did not disapprove transitional control in the judgment entry, because the court failed to place marks around the phrase in the entry. This argument is frivolous.

**{¶ 56}** The pertinent wording in the judgment entry originally stated that "Transfer to Transitional control is approved/not approved." May 23, 2013 Judgment Entry, Doc. # 56, p. 5. The trial court crossed out "is approved," and the only remaining words are "Transitional control * * * not approved." *Id.* The only possible interpretation of these words is that the trial court disapproved transitional control.

**{¶ 57}** Accordingly, Berry's Third Assignment of Error is sustained. This case will be remanded so that the trial court can correct its entry with respect to transitional control.

## V. Conclusion

{¶ 58}   Berry's First Assignment of Error having been overruled, and his Second and Third Assignments of Error having been sustained, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Nathaniel R. Luken
David M. Morrison
Hon. Stephen Wolaver