[Cite as *State v. Wells*, 2015-Ohio-3511.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-7 |
| | : | |
| v. | : | T.C. NO. 14CR487 |
| | : | |
| MICHAEL WELLS | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___26th___ day of ____August____, 2015.

. . . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

REGINA R. RICHARDS, Atty. Reg. No. 0079457, 4 West Main Street, #707, Springfield, Ohio 45502
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

        {¶ 1} Defendant-appellant Michael Wells appeals his conviction and sentence for

three counts of theft, in violation of R.C. 2913.02(A)(1), all felonies of the fifth degree. Wells filed a timely notice of appeal with this Court on January 27, 2015.

{¶ 2} The incident which forms the basis for the instant appeal occurred between the dates of July 17, 2014, and July 18, 2014, when Wells broke into multiple travel trailers at the PayLess Storage Unit facility located at 111 Tremont City Road in Springfield, Ohio. Wells, who rented a storage unit at PayLess, used his own security clearance to enter the facility before breaking into three victims' units and stealing property therefrom. When police responded to the scene of the thefts, they located the stolen property in Wells' storage unit.

{¶ 3} On July 28, 2014, Wells was indicted for three counts of theft in Case No. 14-CR-487. A second indictment was later filed against Wells in Case No. 14-CR-513 for one count of theft and one count of breaking and entering. The second indictment was returned once the owner of some of the recovered property was identified. At his arraignment on August 4, 2014, Wells pled not guilty to the charged offenses. Wells changed his plea to not guilty by reason of insanity in a motion filed on August 27, 2014. In a separate motion filed on the same day, Wells requested that the trial court appoint an expert to determine whether he was competent to stand trial. In an entry issued on September 9, 2014, the trial court ordered Wells to undergo a competency evaluation on September 22, 2014, at the Forensic Psychiatry Center for Western Ohio. The evaluation was later rescheduled for October 1, 2014.

{¶ 4} On October 23, 2014, the trial court issued an entry finding Wells competent to stand trial based on the report of the evaluating psychologist. Wells' trial on both indictments was scheduled for November 19, 2014. However, on November 18, 2014, in

return for the State's silence at sentencing, Wells pled guilty to the three counts of theft in Case No. 14-CR-487 and one count of theft and one count of breaking and entering in Case No. 14-CR-513. The trial court found Wells guilty on all counts in each case and ordered the probation department to prepare a pre-sentence investigation report (PSI). On January 9, 2015, the trial court sentenced Wells to nine months for each theft count in Case No. 14-CR-487 to run consecutively to one another, for a total of twenty-seven months in prison. In Case No. 14-CR-513, the trial court sentenced Wells to nine months each for the theft and the breaking and entering and ordered that the sentences be served concurrent to one another. The trial court then ordered the sentence imposed in Case No. 14-CR-487 to be served consecutively to the sentence in Case No. 14-CR-513, for an aggregate sentence of thirty-six months in prison.[1]

**{¶ 5}** It is from this judgment that Wells now appeals.

**{¶ 6}** Initially, we note that after reviewing the parties' briefs, we identified a potential error not raised by Wells, to wit: "Whether the trial court erred in imposing a consecutive three-year prison term in lieu of mandatory community control sanctions after the trial court received information from the Ohio Department of Rehabilitation and Corrections (ODRC) pursuant to R.C. 2929.13(B)(1)(a)." Both parties submitted supplemental briefing addressing the potential error. Having reviewed the additional briefing, we will address the supplemental error in addition to the error submitted by Wells in his original appellate brief.

---

[1] We note that on February 25, 2015, counsel for appellant moved to voluntarily dismiss the appeal in Case No. 14-CR-513 (2015 CA 6). This request was granted on March 17, 2015, by this Court. In view of this Court's decision in the instant case, we note that the dismissal may be subject to a delayed motion for reconsideration pursuant to App. R. 26(A)(1) or a delayed motion to reopen pursuant to App. R. 26(B).

{¶ 7} Wells' first assignment of error is as follows:

{¶ 8} "THE TRIAL COURT ERRED IN ORDERING THREE CONSECUTIVE NINE-MONTH SENTENCES FOR THREE FIFTH-DEGREE FELONY THEFTS ARISING FROM THE SAME CONDUCT, THAT IN TOTALITY EXCEED THE MAXIMUM ONE-YEAR SENTENCE HAD DEFENDANT'S CONVICTIONS BEEN MERGED AS ALLIED OFFENSES PURSUANT TO R.C. §2941.25 FOR SENTENCING PURPOSES."

{¶ 9} In his first assignment, Wells contends that the trial court erred when it found that theft Counts I, II, and III were not allied offenses of similar import, and therefore, did not merge for the purposes of sentencing. Wells argues that he committed the thefts in the course of the same incident and that he had a single animus for each theft offense.

{¶ 10} We note that we apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 11} R.C. 2941.25, concerning allied offenses of similar import, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 12}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court announced a new test for determining when offenses are allied offenses of similar import.  Pursuant to *Johnson*, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.* at ¶ 44. The Court further noted that:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." * * *
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge.

(Citations and quotations omitted.) *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942

N.E.2d 1061, at ¶ 48-51; see also *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 16.

{¶ 13} Most recently, the Ohio Supreme Court held that two or more offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 23. Therefore, offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if any of the following are true: "1) the offenses are dissimilar in import or significance ***; 2) the offenses were committed separately; [or] 3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25. This analysis "may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct – an inherently subjective determination." *Id.* at ¶ 32, citing *Johnson*, 128 Ohio St.3d 153, ¶ 52.

{¶ 14} In the instant case, Wells argues that Counts I, II, and III should merge because the thefts from the storage units were committed with a single animus and in a single course of conduct. Wells pled guilty to these three theft offenses under the same subsection of R.C. 2913.02(A)(1), which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: 1) [w]ithout the consent of the owner or person authorized to give consent."

{¶ 15} Applying the merger analysis recently iterated in *Ruff*, we must first determine whether Wells' three theft offenses are dissimilar in import or significance. Two or more offenses are dissimilar in import when the offenses involve separate victims,

or when the resulting harm from each offense is separate and identifiable. *Ruff*, ¶ 23.

{¶ 16} Upon review, we conclude that the trial court did not err when it found that Counts I, II, and III were not allied offenses of similar import because each of Wells' thefts involved separate victims. At the plea hearing, the State noted that "the defendant broke into multiple travel trailers that were being stored by multiple victims" at the storage facility. When it addressed Wells, the trial court noted that "count two was identical to count one *** but involve[d] a separate incident." The trial court also stated that Count III also involved a separate victim and contained a specification that the victim of the offense was an elderly or disabled adult. Finally, we note that Wells' PSI states that each theft count involved a different victim. Thus, the trial court properly refused to merge Wells' convictions under R.C. 2941.25. Compare *Johnson* at ¶ 15, quoting 1973 Legislative Service Commission comments to 1972 Am.Sub.H.B. No. 511 (explaining that " 'a thief who *** steals different property from three separate victims in the space, say, of five minutes, can be charged with and convicted of all three thefts' " because " 'the same offense is committed three different times, and in the second instance the same offense is committed against three different victims, i.e. with a different animus as to each offense.' ").

{¶ 17} Wells' first assignment of error is overruled.

{¶ 18} Wells' supplemental assignment of error, is as follows:

{¶ 19} "THE TRIAL COURT ERRED IN IMPOSING A CONSECUTIVE THREE YEAR PRISON SENTENCE IN LIEU OF MANDATORY COMMUNITY CONTROL SANCTIONS AFTER THE [ODRC] REPORTED TO THE TRIAL COURT PURSUANT TO R.C. 2929.13(B)(1)(a) THE AVAILABILITY OF TWO DIFFERENT COMMUNITY

CONTROL SANCTIONS."

{¶ 20} In the supplemental assignment, Wells argues that the trial court erred when it imposed a consecutive three-year prison term in lieu of mandatory community control sanctions.   R.C. 2929.13(B)(1)(a), states as follows:

(B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.

{¶ 21} "The overriding purposes of felony sentencing are to protect the public from

future crime by the offender and others and to punish the offender." R.C. 2929.11(A).

**{¶ 22}** "[I]n *State v. Barker,* Montgomery App. No. 22779, 2009-Ohio-3511, at ¶ 36-37, we stated:

" '[I]n exercising its discretion the trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, * * * 2006-Ohio-855, at ¶ 37.'" *State v. Ulrich*, 2d Dist. Montgomery No. 23737, 2011-Ohio-758, at ¶ 20-21. "[E]ven if there is no specific mention of [R.C. 2929.11 and R.C. 2929.12], 'it is presumed that the trial court gave proper consideration to those statutes.'" *State v. Hall*, 2d Dist. Clark No. 10-CA-23, 2011-Ohio-635, ¶ 51.

" 'When reviewing felony sentences, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to find whether the sentence is contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, * * * , 2008-Ohio-4912. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse of discretion standard. Id.'" *Ulrich*, at ¶ 22.

*State v. Bailey*, 2d Dist. Clark No. 2011-CA-40, 2012-Ohio-1569, ¶s 12-14.

**{¶ 23}** " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.' *State v. Nelson*, 2d

Dist. Montgomery No. 25026, 2012-Ohio-5797, ¶ 62. 'However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12.' *Id.*" *State v. Eicholtz*, 2d Dist. Clark No. 2012 CA 7, 2013-Ohio-302, ¶ 53.

**{¶ 24}** On November 21, 2014, an "attempted disposition" was held after Wells pled guilty to four counts of theft and one count of breaking and entering on November 18, 2014. In an entry issued on November 25, 2014, the trial court found that community control was mandatory pursuant to R.C. 2929.13. The trial court stated that it "believe[d] that no community control sanctions [were] available for its use that, if imposed on the defendant, [would] adequately fulfill the overriding principles and purposes of sentencing as set forth in the Ohio Revised Code." We note that at the time of Wells' "attempted disposition," he had been in jail since July 29, 2014, approximately four months, after being arrested for the instant offenses. Nevertheless, the trial court requested, pursuant to R.C. 2929.13(B)(1)(c), that the Ohio Department of Rehabilitation and Corrections (ODRC) provide it with names and contact information for treatment programs of at least one year's duration that were available to defendants sentenced by the court.

**{¶ 25}** R.C. 2929.13(B)(1)(c) states in pertinent part:

If a court that is sentencing an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense believes that no community control sanctions are available for its use that, if imposed on the offender, will adequately fulfill the overriding principles and purposes of sentencing, the court shall contact the department of rehabilitation and correction and ask the department to provide the court with the names of, contact information

for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court. Not later than forty-five days after receipt of a request from a court under this division, the department shall provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court, if any. Upon making a request under this division that relates to a particular offender, a court shall defer sentencing of that offender until it receives from the department the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court or for forty-five days, whichever is the earlier.

{¶ 26} On December 22, 2014, Rick Harmon, on behalf of the ODRC, responded to the trial court's request for information regarding community control programs for Wells to attend in lieu of prison. Under the section "Identified Resources Available", Harmon checked the boxes for "Electronic Monitoring" and "CBCF,"[2] naming West Central as an in-patient resource for Wells. The box designated "No Resources Available" was not checked.

{¶ 27} However, at the second sentencing hearing on January 9, 2015, the trial court found that the ODRC had only identified West Central as a viable community control option for Wells. The trial court concluded that the program at West Central only lasted from four to six months and was, therefore, not an adequate community control option

---

[2] Community Based Correctional Facility, as defined in R.C. 2929.01(D).

because it was less than a year in duration. With respect to electronic monitoring, the trial court found that it was not a "program," and deemed it inadequate as well. The trial court did not note the fact that as of January 9, 2015, Wells had jail time credit of approximately 176 days. The trial court then proceeded to sentence Wells to prison.

{¶ 28} Upon review, we conclude that the trial court erred when it refused to impose a mandatory term of community control upon Wells. Wells had already spent approximately six months in jail at the time of his disposition. Had he been committed to West Central, along with a period of electronic home monitoring and up to five years of community control, he clearly would have fallen within the mandatory community control provisions. See R.C. 2929.16 (statute providing a number of available community control residential sanctions that may be imposed upon an offender in lieu of or in addition to jail time). Furthermore, the trial court erred when it found that electronic monitoring was not a suitable alternative option for Wells's community control sanction. While it is considered a non-residential sanction pursuant to R.C. 2929.17(B), electronic monitoring was clearly a viable option for Wells in addition to a four to six month term at West Central, CBCF. Simply put, the trial court had several options available whereby it could have fashioned an appropriate community control sanction for Wells. To construe the statute to require a year or more in-patient treatment for an indigent criminal defendant as the only suitable manner to fall within the mandatory community control provision is to eviscerate the law entirely. For the trial court to find that it was not provided with "program details" for year-long community sanctions by the ODRC may be technically accurate, but both West Central and EHDP are firmly established alternatives to imprisonment which are established by the Ohio Revised Code, and details would be

available to any Common Pleas Court judge in Ohio. Accordingly, we find that the trial court erred when it imposed a prison term in the instant case since Wells was clearly entitled to term of mandatory community control pursuant to R.C. 2929.13(B)(1)(a).

**Imposition of Consecutive Sentences**

{¶ 29} In *State v. Mansley*, 2d Dist. Montgomery No. 26417, 2015-Ohio-2785, ¶s 5-8, we stated the following regarding our present standard of review of felony sentences:

In *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.), we held that the abuse of discretion standard was no longer applicable for reviewing the propriety of felony sentences. Instead, we referred to the statutory provisions found in R.C. 2929.11, R.C. 2929.12, and R.C. 2953.08, and concluded that a felony sentence will be upheld as long as it is neither clearly nor convincingly unsupported by the record nor contrary to law. *See also State v. Johnson*, 2d Dist. Clark No. 2013-CA-85, 2014-Ohio-2308.

Our recent opinions suggest an unresolved debate within this court over the issue of whether appeals from sentences, generally, are subject to an abuse-of-discretion standard of review as well as the clear-and-convincingly-contrary-to-law standard. *See State v. Overholser*, 2d Dist. Clark No. 2014-CA-42, 2015-Ohio-1980, including Judge Welbaum's dissent; *State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160, including Judge Hall's dissent; *State v. Polhamus,* 2d Dist. Miami No. 2013-CA-3, 2014-Ohio-145, ¶ 46, fn.8 (Donovan, J., dissenting in part); *State v. Fahl,* 2d Dist. Clark No. 2013-CA-5,

2014-Ohio-328, ¶ 22; *State v. Johnson*, 2d Dist. Clark No. 2013-CA-85, 2014-Ohio-2308, ¶ 9, fn 1; and *State v. Garcia*, 2d Dist. Greene No. 2013-CA-51, 2014-Ohio-1538, ¶ 9, fn 1. Recently, the Seventh District Court of Appeals, which had chosen to employ both an abuse-of-discretion standard and the clear-and-convincingly-contrary-to-law standard, reversed its position and no longer applies the abuse-of-discretion standard to sentencing appeals. *State v. Wellington,* 7th Dist. Mahoning No. 14-MA-115, 2015-Ohio-1359.

A review of our decisions reveals a consistent approach that we must affirm a sentence unless it is contrary to law or we find that the record does not clearly and convincingly support required statutory findings or consideration of statutory factors. However, in determining whether these two standards are met sometimes calls for an abuse-of-discretion review, or involves the application of principles developed within an abuse-of-discretion review. Reviewing the record to determine if the trial court considered all factors or made sufficient findings required by some of the sentencing statutes often calls for a review of the trial court's exercise of discretion. For example, we have found that a trial court errs when it fails to make specific findings identifying particularized reasons for disapproving placement in a program of shock incarceration or intensive program prison. *See, e.g., State v. Berry*, 2d Dist. Greene No. 2013-CA-34, 2014-Ohio-132. This type of error equates to an abuse of discretion that occurs when the trial court provides no sound reasoning process to support its decision.

In felony sentencing, the trial court is required to weigh all relevant factors invoked by the facts of the case, and the act of balancing different factors and deciding which factors outweigh others necessarily involves the exercise of judicial discretion (for example, whether the trial court's determination that the imposition of community control sanctions would demean the seriousness of the offense outweighs other factors, such as the offender's unlikelihood of recidivism). *See*, *e.g.*, *State v. Hodge*, 2d Dist. Miami No. 2013 CA 27, 2014-Ohio-1860.   Discretion is also required when the trial court chooses a sentence within a statutory range. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences. * * * However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12." *State v. Johnson*, 2d Dist. Clark No. 2013-CA-85, 2014-Ohio-2308, ¶ 8, citing *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d. Dist.).

{¶ 30} We have also cautioned against applying the proper review standard in manner that is too formalistic:

"Formalism" has been described as scrupulous or excessive adherence to outward form at the expense of inner reality or content. We are concerned that our sentencing jurisprudence has become a rubber stamp for rhetorical formalism. It appears that consecutive sentences will be upheld on appellate review as long as the aggregate sentence is within the

arithmetic long-addition established by the statutes and the trial judge and the entry state that this calculation is necessary to protect the public from future crime or to punish the offender, (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one or more of the offenses was committed while awaiting trial or sentencing. Here, the minimally-required statutory phrases were uttered, and a 22-year-old non-psychopathic addict, with only a previous juvenile suspended DYS commitment and no adult felony record, will spend the next twenty years in prison at the expense of the taxpayers, not to mention the damage to him and to the community where he will be released.

*State v. Overholser*, *supra* at ¶28, citing *State v. Adams*, *supra* at ¶ 30.

{¶ 31} Therefore, we will review the sentence in the case before us to determine whether it is clearly and convincingly unsupported by the record, or contrary to law, recognizing that reviewing the trial court's proper application of law involving the use of discretion is a part of the sentencing review process.

{¶ 32} Before imposing the consecutive sentences, the trial court was required to find: (1) "consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 33} In the instant case, the trial court made the following requisite findings at the sentencing hearing and in its judgment entry with respect to consecutive sentencing:

The Court finds that consecutive sentences are necessary to protect the public from future crime and to punish the defendant. That they are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public. *That at least two of the multiple offenses were committed as part of one or more courses of conduct* and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of his conduct.

{¶ 34} We note that Wells's offenses, while involving separate victims, were all

committed at the same storage facility during the same period of time, and should therefore, not be characterized as a "course of conduct"[3] for the purposes of imposing consecutive sentences. None of the offenses involved violence, and it appears that no one was present when he committed the thefts and the companion breaking and entering. At the time Wells was sentenced, he was fifty-five years old and found to be barely functioning within a borderline intellectual level. Wells has trouble reading and writing and had to have his probation officer complete his probation form for him. Wells's PSI also established a moderate to low likelihood of recidivism. Wells's criminal record, not including the instant offenses, consisted of only three misdemeanor offenses, all of which were from some fifteen years earlier. Wells was homeless for five months prior to his arrest on the instant charges. Wells' PSI indicated that he has an alcohol problem. As previously discussed, based on the level of his offenses, Wells was entitled to mandatory community control and had already been in jail for approximately six months prior to being sentenced.

{¶ 35} Without minimizing the inconvenience the theft offenses undoubtedly caused the victims, Wells' offenses do not rise to the level of such seriousness and danger to the public that consecutive terms in prison would be necessary to protect the public. For the foregoing reasons, we conclude that the trial court's imposition of consecutive sentences was an abuse of discretion and contrary to law.

{¶ 36} Wells' supplemental assignment of error having been sustained, the

---

[3] We note that the PSI reveals that the companion case, Case No. 2014-CR-513, was indicted later due to the subsequent identification of a fourth victim, Mr. Frock. Mr. Frock's property had been recovered on July 18, 2014, along with the property of other victims which led to the instant indictment. (See Probable Cause Affidavit in PSI for later indictment).

sentence imposed by the trial court is reversed and vacated. Additionally, we recognize that had Wells been properly sentenced to mandatory community control even with a subsequent revocation, his sentence could not have exceeded the maximum for any individual offense of one year. This one year having already been served, we order that Wells be immediately released from prison in this case.

. . . . . . . . . .

FROELICH, P.J., concurs.

WELBAUM, J., concurring in judgment only.

**{¶ 37}** I very respectfully concur in the judgment only.

**{¶ 38}** While I agree that the judgment of the trial court should be reversed, I disagree with the standard of review the majority has applied in considering the trial court's imposition of consecutive sentences. I have previously stressed that abuse of discretion is no longer the correct standard of review. *State v. Overholser*, 2d Dist. Clark No. 2014-CA-42, 2015-Ohio-1980, ¶ 36-39 (Welbaum, J., dissenting), citing *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.). As a result, our analysis should not focus on whether a trial court abused its discretion.

**{¶ 39}** I also noted in *Overholser* that the standard for reviewing felony sentences under R.C. 2953.08(G)(2)(a) is " 'extremely deferential.' " *Id.* at ¶ 38, quoting *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.). In *Venes*, the Eighth District Court of Appeals stated that:

> It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review

is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.

It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

*Venes* at ¶ 20-21.

{¶ 40} Although the majority has incorrectly relied on abuse of discretion, I do agree that the judgment of the trial court should be reversed. However, my position is based on other grounds. Specifically, after reviewing the record, I clearly and convincingly find that imposition of a prison sentence was contrary to law. R.C. 2953.08(G)(2)(b).

{¶ 41} As the majority opinion notes, under R.C. 2929.13(B)(1)(a), the trial court would have been required to impose a community control sanction of at last one year's duration, since Wells satisfied the criteria in that subsection for mandatory imposition of community control. The trial court avoided the community control requirement by: (1) asking the Ohio Department of Rehabilitation and Correction (ODRC), pursuant to R.C. 2929.13(B)(1)(c), to provide the court with program details of any community control sanction of at least one year's duration that was available for persons sentenced by the

court; and (2) then concluding, under R.C. 2929.13(B)(1)(b)(iv), that ODRC had not provided it with information about such sanctions.   By taking this course, the court obtained "discretion" to impose a prison term under R.C. 2929.13(B)(1)(b).

{¶ 42} Following the trial court's request, ODRC informed the court about electronic home monitoring, which is a sanction that could have been imposed for at least a year.   However, the court rejected this option, stating in its entry of conviction that electronic monitoring "is not a program."   Doc. #17, p.1.

{¶ 43} Contrary to the trial court's statement, the statutory provisions in question [R.C. 2929.13(B)(1)(b) and (c)] do not require that the community control sanction be a "program."   Instead, R.C. 2929.13(B)(1)(c) requires ODRC to "provide the court with the names of, contact information for, and program details *of one or more community control sanctions of at least one year's duration* that are available for persons sentenced by the court, if any."   (Emphasis added.)   R.C. 2929.13(B)(1)(b)(iv) contains the same language.

{¶ 44} R.C. 2929.13(B)(1)(b) and (c) do not define what a community control sanction is.   However, R.C. 2929.01(E) does define a community control sanction, for purposes of R.C. Chapter 2929, as follows:

"Community control sanction" means a sanction that is not a prison term and that is described in section 2929.15, 2929.16, 2929.17, or 2929.18 of the Revised Code or a sanction that is not a jail term and that is described in section 2929.26, 2929.27, or 2929.28 of the Revised Code.

{¶ 45} The majority opinion does not consider this statutory definition of a community control sanction.   However, electronic monitoring is not a prison term and it is

described in R.C. 2929.17(B); therefore, electronic monitoring is clearly a community control sanction for purposes of R.C. 2929.13(B)(1)(b) and (c).

{¶ 46} The majority opinion does state that electronic monitoring is a non-residential sanction and was a viable option. Majority Opinion, ¶ 28. This is correct with respect to whether electronic monitoring was a viable option, but whether monitoring is residential or non-residential is irrelevant. R.C. 2929.13(B)(1)(b) and (c) do not require that a community control sanction of at least one year's duration be either residential or non-residential, or more importantly, that the sanction be a "program." All that is required is that the ODRC provide information about a community control sanction of at least one year's duration that is available. In the case before us, there was no indication that electronic monitoring was not available for at least a year's duration.

{¶ 47} This error in the trial court's decision renders the decision contrary to law. The court had an available option furnished by the ODRC in compliance with the actual terms of the statute. However, the court erroneously disregarded it and imposed a prison sentence, which the court was not empowered to do under R.C. 2929.13(B)(1).

{¶ 48} In view of the preceding discussion, I also disagree with the statement in ¶ 28 of the majority opinion that the trial court may have been "technically accurate" in stating that it was not provided with "program details" for year-long community control sanctions by ODRC. Our statement is incorrect, because the statute does not require a "program" and the trial court was not technically accurate when it stated that ODRC did not provide it with program details for year-long community control sanctions. To the contrary, ODRC provided what it was supposed to provide – information about community control sanctions of at least one year's duration that were available to the court.

{¶ 49} As a further matter, I disagree with the majority's reliance on the combination of the confinement that Wells had already undergone and the four to six-month term available at West Central. R.C. 2929.13(B)(1)(c) requires ODRC to "provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration." The West Central sanction did not fit the clear terms of the statute. Nonetheless, the trial court would have had the original discretion to place Wells on a term of community control, which could include the six-month jail term already served and the six-month term available at West Central.

{¶ 50} Another area where I disagree with the majority opinion involves the discussion of the propriety of consecutive sentences. Any such discussion is premature. If the trial court was required to sentence Wells to community control sanctions, the issue of consecutive sentences would not arise until such time as Wells is sentenced for a violation of community control, if that ever happens to occur. As was noted in *State v. Stevens*, 2d Dist. Greene No. 2014-CA-10, 2015-Ohio-1051:

> "[C]ommunity control revocation proceedings are not the same as a criminal trial, and a revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Black*, 2d Dist. Montgomery No. 24005, 2011-Ohio-1273, ¶ 17. Upon revoking community control, the trial court may (1) lengthen the term of the community control sanction; (2) impose a more restrictive community control sanction; or (3) impose a prison term on the offender, provided that the prison term is within the range

of prison terms available for the offense for which community control had been imposed and the term does not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing. R.C. 2929.15(B).

* * *

When an offender's community control is revoked and multiple prison terms are imposed for the underlying offenses, the trial court must make the findings under R.C. 2929.14(C)(4) before imposing consecutive sentences at the revocation sentencing hearing. *See, e.g., State v. West*, 2d Dist. Montgomery No. 24998, 2012-Ohio-4615 (noting that the prison sentence for violating community control was not imposed until the revocation sentencing hearing, and that the trial court was required to comply with R.C. 2929.14(C)(4) to impose consecutive sentences); *State v. Jacquillard*, 1st Dist. Hamilton No. C-140001, 2014-Ohio-4394 (applying R.C. 2929.14(C)(4) to sentencing upon revocation of community control); *State v. Holman*, 8th Dist. Cuyahoga No. 100468, 2014-Ohio-3908; *State v. Steck*, 6th Dist. Wood Nos. WD-13-017 and WD-13–018, 2014-Ohio-3623.

*Stevens* at ¶ 8-9.

**{¶ 51}** When a trial court imposes community control sanctions during the initial sentencing hearing, the court does not sentence the defendant to alternate sanctions, like a prison term or consecutive sentences of imprisonment, at that time. *West* at ¶ 13, citing *State v. Nistelbeck*, 10th Dist. Franklin No. 11AP-874, 2012-Ohio-1765, ¶ 7-11. Instead, a trial court's duty at the time of sentencing an offender to a community control

sanction, "[p]ursuant to R.C. 2929.19(B)(5) and 2929.15(B), [is to] * * * *notify* the offender of the specific prison term that *may* be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation." (Emphasis added.) *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, paragraph two of the syllabus.

{¶ 52} Thus, because the trial court does not sentence the defendant at the time of the original sentencing hearing, but only notifies the defendant of the possible sentence that may be imposed in the event of a community control violation, the issue of consecutive sentences has not yet arisen in the case before us, and may never arise.

{¶ 53} On the record currently before us, I would agree that imposing consecutive sentences appears to be clearly and convincingly unsupported by the record, based on Wells's lack of criminal history and the relatively minor nature of his offenses. I do not agree with the conclusion in ¶ 34 of the majority opinion that Wells' offenses should not be characterized as a course of conduct. Although not strictly applicable here, the Supreme Court of Ohio has held in the context of the aggravating circumstances specification in R.C. 2929.04(A)(5) that " 'the trier of fact "must * * * discern some connection, common scheme, or some pattern or psychological thread that ties [the offenses] together." ' " *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 78, quoting *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, syllabus. (Other citation omitted.) In *Perez*, the court noted its prior holding that "murders committed over a year apart were part of the same course of conduct, based on common motives and similarity in the modi operandi of the crimes." *Perez* at ¶ 82, citing *Sapp* at ¶ 59-60. In the case before us, there was a connection and pattern that tied the offenses together.

However, as I said, the consecutive sentences issue, and the criteria for imposing such sentences, are not ripe for our consideration.

{¶ 54} Based on the above discussion, I agree with the majority that Wells' sentence should be reversed and vacated. Accordingly, I very respectfully concur only in the judgment.

. . . . . . . . . .

Copies mailed to:

Ryan A. Saunders
Regina R. Richards
Hon. Douglas M. Rastatter
ODRC – London Correctional Facility