[Cite as *State v. Mockensturm*, 2021-Ohio-881.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

      Appellee

v.

Brianna Mockensturm

      Appellant

Court of Appeals Nos. WD-20-007
WD-20-008

Trial Court Nos. 2019CR0115
2018CR0535

**DECISION AND JUDGMENT**

Decided: March 19, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this consolidated appeal, appellant, Brianna Mockensturm, appeals the July 26, 2019 judgment of the Wood County Court of Common Pleas, sentencing her to an aggregate prison term of 16 years following her conviction on two counts of involuntary manslaughter. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} This is a consolidated appeal involving two cases—case No. 2018CR0535 and case No. 2019CR0115—from the Wood County Court of Common Pleas. Mockensturm was convicted of one count of involuntary manslaughter in each case. The events underlying case No. 2019CR0115 occurred before the events underlying case No. 2018CR0535.

{¶ 3} A.V. is the victim in case No. 2019CR0115. In 2018, A.V. was enrolled in treatment at a drug rehabilitation center. While he was there, Mockensturm sent him texts and Facebook messages encouraging him to leave rehab and start using drugs again. After approximately 100 days of treatment, Mockensturm convinced A.V. to leave and move back in with his family. He left treatment on or about June 5, 2018.

{¶ 4} That same day, Mockensturm and J.P.—Mockensturm's boyfriend and the victim in case No. 2018CR0535—went to visit A.V. at his family's apartment in Bowling Green, Ohio. Mockensturm and A.V. spent approximately one-half hour alone in his room while J.P. waited on the porch. Mockensturm and J.P. eventually left. The next morning, A.V.'s brother—who came home to congratulate A.V. on his drug treatment— found A.V. dead in his bedroom, along with a bag of drugs in his pocket that contained a mixture of heroin and fentanyl. Mockensturm denied that she gave A.V. the drugs. J.P., however, admitted that he and Mockensturm had purchased heroin just before they went to visit A.V. The coroner determined A.V. died as a result of an overdose of fentanyl and norfentanyl.

2.

{¶ 5} On September 28, 2018—approximately three months after A.V. died—J.P. died from a drug overdose. J.P. was found dead with a syringe in his hand in a bathroom of Toledo Mold & Die—where Mockensturm worked—along with a McDonald's receipt from earlier that day. The state obtained the security video from the McDonald's restaurant located in Bowling Green, Ohio, for that particular purchase, and saw that Mockensturm had purchased the food reflected on the receipt. Through testing, the state confirmed that the receipt was used as a fold for the same mixture of heroin and fentanyl that was found in J.P.'s blood.

{¶ 6} According to surveillance video obtained from Toledo Mold & Die from the previous day, Mockensturm and J.P. met outside the building and sat under an awning where they were not visible to video cameras. J.P. later entered a bathroom inside the building. His body was discovered the following morning. The coroner determined his cause of death to be an accidental overdose of heroin and fentanyl. Mockensturm's DNA was found on the syringe.

{¶ 7} According to texts and Facebook messages between Mockensturm and J.P., Mockensturm regularly traveled to Toledo, Ohio, to purchase drugs that she sold to others—including J.P. The messages demonstrate that J.P. purchased heroin from Mockensturm the day before his body was discovered.

{¶ 8} On November 21, 2018, Mockensturm was indicted in case No. 2018CR0535—relating to victim J.P.—with the following charges: two counts of trafficking in heroin in violation of R.C. 2925.03(A)(1) and (C)(6)(a), each a fifth-degree

3.

felony; one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(a), a fourth-degree felony; one count of corrupting another with drugs in violation of R.C. 2925.02(A)(3) and (C)(1), a second-degree felony; one count of reckless homicide in violation of R.C. 2903.041(A) and (B), a third-degree felony; and one count of involuntary manslaughter in violation of R.C. 2903.04(A) and (C), a first-degree felony.   Mockensturm appeared for her arraignment on December 13, 2018, and entered a not guilty plea to all six counts.

{¶ 9} On March 21, 2019, Mockensturm was indicted in case No. 2019CR0115—relating to victim A.V.—with the following charges:  one count of possession of criminal tools in violation of R.C. 2923.24(A) and (C), a fifth-degree felony; one count of corrupting another with drugs in violation of R.C. 2925.02(A)(3) and (C)(1), a second-degree felony; one count of reckless homicide in violation of R.C. 2903.041(A) and (B), a third-degree felony; and one count of involuntary manslaughter in violation of R.C. 2903.04(A) and (C), a first-degree felony.  Each count included a forfeiture specification pursuant to R.C. 2941.1417(A).  Mockensturm appeared for her arraignment on April 8, 2019, and entered a not guilty plea to all four counts.

{¶ 10} Following negotiations with the state, Mockensturm appeared for a change of plea hearing on June 10, 2019.  Pursuant to a plea agreement, Mockensturm agreed to enter a guilty plea to the involuntary manslaughter count in each case.  In exchange for her guilty plea, the state agreed to request dismissal of all other counts.  The trial court

4.

accepted Mockensturm's guilty plea and ordered her to participate in a presentencing investigation.

{¶ 11} Mockensturm appeared for sentencing on July 22, 2019.  The trial court imposed an eight-year prison term on each of Mockensturm's involuntary manslaughter convictions.  The prison terms were ordered to be served consecutively resulting in an aggregate sixteen-year prison term.  The trial court dismissed all remaining counts in both cases at the state's request.  Mockensturm's sentence was journalized on July 26, 2019.  Mockensturm timely appealed the judgment in each case.  On March 26, we ordered the appeals to be consolidated and Mockensturm now asserts the following errors for our review:

> 1.  Appellant was sentenced contrary to the overriding purposes of felony sentencing in R.C. 2929.11.

> 2.  Appellant was sentenced to consecutive sentences contrary to R.C. 2929.14.

## II.  Law and Analysis

{¶ 12} We review felony sentences under R.C. 2953.08(G)(2).  *State v. Goings*, 6th Dist. Lucas No. L-13-1103, 2014-Ohio-2322, ¶ 20.  We may increase, modify, or vacate and remand a trial court's imposition of consecutive sentences only if we clearly and convincingly find that:  (1) "the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14, * * *" or (2) "the sentence is otherwise contrary to law."  *Id.*, citing R.C. 2953.08(G)(2).  In *State v. Tammerine*, 6th

Dist. Lucas No. L-13-1081, 2014-Ohio- 425, ¶ 15, we recognized that a sentence is not clearly and convincingly contrary to law for purposes of R.C. 2953.08(G)(2)(b) where the trial court has considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12, properly applied postrelease control, and sentenced the defendant within the statutorily-permissible range.

{¶ 13} The burden is on the appellant to identify clear and convincing evidence in the record that their sentence was erroneously imposed. *State v. Torres*, 6th Dist. Ottawa No. OT-18-008, 2019-Ohio-434, ¶ 6.

### A. Mockensturm's sentences are not contrary to law.

{¶ 14} In her first assignment of error, Mockensturm argues that the trial court failed to comply with the overriding purposes of felony sentencing because her individual eight-year sentences, as well as her "total 16 year sentence," are not the "minimum sanctions" that would satisfy the purposes of felony sentencing under R.C. 2929.11, and because her sentence is not consistent with that of her codefendant, who she says "was sentenced to a mere 2 years in prison for F2 corrupting another with drugs."

{¶ 15} To the extent that Mockensturm is attempting to challenge the overall length of her aggregate 16-year sentence under R.C. 2929.11, the Supreme Court of Ohio has clarified that R.C. 2929.11 and 2929.12 do not apply to consecutive-sentencing review. *State v. Gwynn*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 17. Rather, appellate review of consecutive sentences is limited to R.C. 2929.14(C)(4), as

6.

stated in R.C. 2953.08(G)(2)(a). *Id.* Accordingly, we cannot review the aggregate length of Mockensturm's consecutive sentences under R.C. 2929.11.

{¶ 16} Mockensturm also argues that her individual eight-year sentences are contrary R.C. 2929.11, because they are not the "minimum sanctions" that would satisfy the purposes of felony sentencing. More specifically, Mockensturm argues that she could be effectively rehabilitated with a shorter sentence and, therefore, an eight-year sentence is an unnecessary burden on government resources. Essentially, Mockensturm is inviting this court to make an independent determination as to whether the record supports her eight-year sentences under R.C. 2929.11 and 2929.12—which we cannot do. Although trial courts are obligated to consider the R.C. 2929.11 purposes of felony sentencing and the R.C. 2929.12 seriousness and recidivism factors when imposing felony sentences, R.C. 2953.08(G)(2) does not permit an "appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, Slip Opinion No. 2020-Ohio-6729, ¶ 42. Accordingly, Mockensturm's argument is without merit.

{¶ 17} Lastly, Mockensturm argues that her sentence is inconsistent with that of her codefendant who received a two-year prison term for a lesser-degree felony. "'Consistency' is a consideration under R.C. 2929.11(B), and relates to the offender's sentence as compared to that of similarly-situated offenders." *State v. Rombkowski*, 6th Dist. Lucas No. L-18-1092, 2019-Ohio-2650, ¶ 12. Although the trial court did not make

7.

a specific finding that Mockensturm's sentence is consistent with that of her codefendant, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones* at ¶ 20. In fact, the trial court's consideration of the factors set forth in R.C. 2929.11 and 2929.12 is presumed even on a silent record. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1; *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992). We therefore presume that the trial court properly considered whether Mockensturm's sentences are "consistent with sentences imposed for similar crimes committed by similar offenders" under R.C. 2929.11(B), and we cannot substitute our judgment for that of the trial court. *Jones* at ¶ 39.

{¶ 18} In sum, Mockensturm has failed to identify clear and convincing evidence that her sentence is contrary to law. The errors that she alleges the trial court committed in its consideration of the R.C. 2929.11 purposes of felony sentencing are not subject to our review under R.C. 2953.08(G)(2) and her first assignment of error is found not well-taken.

**B. The record supports the trial court's imposition of consecutive sentences.**

{¶ 19} In her second assignment of error, Mockensturm argues that her consecutive sentences are contrary to law because the record does not support the trial court's findings under R.C. 2929.14(C)(4). Specifically, she argues that because the victims both died, they could not have suffered great or unusual harm as described in R.C. 2929.14(C)(4)(b).

8.

**{¶ 20}** R.C. 2929.14(C)(4) provides as follows:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 21} The statute requires the trial court to make three statutory findings before imposing consecutive sentences. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252; *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26. The court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Beasley* at ¶ 252. "[T]he trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id.* at ¶ 253, citing *Bonnell* at ¶ 37. A trial court's failure to make the necessary findings under R.C. 2929.14(C)(4) renders the imposition of consecutive sentences contrary to law. *See Bonnell* at ¶ 37; *State v. Kubat*, 6th Dist. Sandusky No. S-13-046, 2015-Ohio-4062, ¶ 35.

{¶ 22} Although a trial court must make the findings required by R.C. 2929.14(C)(4), it does not need to explicitly reference the precise language of the statute. "The focus should be on whether the trial court performed the required analysis and made appropriate conclusions, not on whether it can read the statute into the record." *See State v. Gessell*, 6th Dist. Williams No. WM-19-004, 2020-Ohio-403, ¶ 12, citing *State v. Polhamus*, 2d Dist. Miami No. 2013-CA-3, 2014-Ohio-145, ¶ 30. For that reason, "a word-for-word recitation of the language of the statute is not required." *Bonnell* at ¶ 29. Instead, we must be able to discern that the trial court engaged in the correct analysis and the record must contain evidence to support the trial court's findings. *Id.* Moreover,

10.

"[w]hile the sentencing court is required to make findings under R.C. 2929.14(C)(4) before imposing consecutive sentences, it is not required to give reasons explaining the findings." *State v. Green*, 6th Dist. Sandusky No. S-16-010, 2017-Ohio-45, ¶11.

{¶ 23} Here, although the trial court did not explicitly reference R.C. 2929.14(C)(4), it made all three findings at sentencing and in its judgment entry. Indeed, Mockensturm does not dispute that the necessary findings were made. Rather, Mockensturm's only argument against the imposition of consecutive sentences is that the victims suffered death, and death cannot be "great or unusual harm" under R.C. 2929.14(C) because it is an element of involuntary manslaughter. Other than that single argument, Mockensturm fails to cite any evidence in the record to show that the trial court's imposition of consecutive sentences was not supported by the record.

{¶ 24} We have reviewed the record to determine whether the record supports the trial court's findings under R.C. 2929.14(C)—including the finding of "great or unusual harm"—and we find that it does.

{¶ 25} As the trial court noted, Mockensturm demonstrated a pattern of drug abuse and participated in organized criminal activity by trafficking drugs and, ultimately, by providing drugs that ultimately killed two people. Mockensturm sold these drugs to both victims despite being aware of their drug abuse issues and, as the trial court recognized, Mockensturm used her relationship with the victims to facilitate these offenses. Indeed, Mockensturm coaxed A.V. out of rehab and then supplied him with a fatal dose of heroin and fentanyl on the day he was released from treatment. A.V.'s family believed that his

11.

drug treatment would have been successful if Mockensturm had not encouraged him to leave rehab and start using again. And—barely three months after Mockensturm provided the lethal drugs to A.V.—Mockensturm, once again, provided lethal drugs to another victim, J.P., who was found dead on the floor of a restroom. As J.P.'s father testified at the sentencing hearing, Mockensturm's conduct shows a complete lack of remorse. As the trial court stated, Mockensturm's conduct is "insidious."

{¶ 26} We find that this record fully supports the trial court's findings under R.C. 2929.14(C)(4).

{¶ 27} Given that the trial court made all three of the necessary findings under R.C. 2929.14(C)(4), and those findings are supported by the record, we find that the trial court did not err in ordering Mockensturm to serve her sentences consecutively. Accordingly, Mockensturm's second assignment of error is not well-taken.

## III. Conclusion

{¶ 28} We find both of Mockensturm's assignments of error not well-taken. We, therefore, affirm the July 26, 2019 judgment of the Wood County Court of Common Pleas. Mockensturm is ordered to pay the costs of this appeal pursuant to App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                         _____
                                                 JUDGE

Christine E. Mayle, J.

                                                   _____
Gene A. Zmuda, P.J.                                    JUDGE
CONCUR.

                                                   _____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.